773 P.2d 350

**YATES EXPLORATION, INC., a New Mexico corporation, Cibola Energy Corporation, a New Mexico corporation, OTEC, a California corporation, Lynn Lucas, Thomas N. Jones, Roger V. Eaton, Charles M. Saggio, Amy N. Saggio, Raymond L. Surrette, Agnes A. Surrette, Raymond L. Surrette, Jr., and May T. Missec, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**VALLEY IMPROVEMENT ASSOCIATION, INC., a New Mexico corporation, formerly known as Horizon Communities Improvement Association of New Mexico, Inc., Defendant.**

**VALLEY IMPROVEMENT ASSOCIATION, INC., a New Mexico corporation, Third–Party–Plaintiff–Appellant,**

v.

**HORIZON CORPORATION, Third–Party–Defendant–Appellee,**

v.

**Weldon BURRIS, Third–Party Defendant.**

No. 17790.

Supreme Court of New Mexico.

May 4, 1989.

Lanphere, McBride & Gross, Eric D. Lanphere, Rodey, Dickason, Sloan, Akin & Robb, William S. Dixon, James O. Browning, Charles K. Purcell, Albuquerque, for third-party-plaintiff-appellant.

Modrall, Sperling, Roehl, Harris & Sisk, Kevin T. Riedel, J. Douglas Foster, Albuquerque, for third-party-defendant-appellee Horizon.

## OPINION

SCARBOROUGH, Justice.

This suit involves a dispute between a group of persons owning certain subdivision lots, the civic association organized to represent them and the development corporation associated with the subdivisions. The lots were purchased in anticipation of rising residential and commercial development in an area which remains essentially unimproved and unoccupied. Defendant and third-party plaintiff, Valley Improvement Association, Inc. (VIA) appeals from the district court the dismissal of its third-party complaint against appellee Horizon Corporation (Horizon). We affirm.

**Factual Background.** Plaintiffs in the underlying class action lawsuit are past and present owners of lots in two subdivisions located in Valencia County, New Mexico. The lots were platted and promoted by Horizon, a land development corporation. VIA is the successor in interest to Horizon Communities Improvement Association (HCIA), a New Mexico nonprofit corporation formed in 1969, with Horizon's involvement, and intended to be a civic organization representing the lot owners. HCIA was charged with "promot[ing] the common good and social welfare" of the subdivision landowners. Until about 1983 one or more Horizon officers or representatives served as members of the HCIA/VIA board of directors.

After the formation of HCIA, Horizon deeded all of the subdivision lots to HCIA who in turn deeded the properties back to Horizon subject to certain indentures. Then, between 1969 and 1981, Horizon sold thousands of individual lots subject to the indentures which empowered HCIA/VIA to assess and collect annual charges on each lot. The collected funds were to be used for the benefit of the subdivisions.

Plaintiffs in the underlying suit allege that while funds in excess of $15,000,000 have been collected by HCIA/VIA, only negligible amounts have actually been used to benefit the properties. Apparently little or no utility services, buildings, or improved roads exist within the two subdivisions which remain undeveloped. The directors of HCIA/VIA are said to have used the funds unlawfully. The assessment methods themselves are said to be irrational and arbitrary. Enforcement action by HCIA/VIA is said to be selective.

At the same time HCIA/VIA has filed foreclosure actions upon hundreds of landowners for nonpayment of the assessments. Also, a large number of the lots have been sold by the State of New Mexico for unpaid taxes. The plaintiffs claim there is little, if any, market for the resale of these lots due, in large part, to the continued existence of the indentures. The plaintiffs allege the directors of VIA have so manipulated the association meetings and elections that the voting power of the membership is illusory leaving the members with no effective way to eliminate or

**408**

change the assessments other than legal action.

In their complaint against VIA, the plaintiffs listed a number of potential remedies including: the dissolution of VIA; an accounting for all of the assessments VIA has received; the invalidation of the indentures; turning over the assessment funds to the plaintiffs, to a trustee, or to another nonprofit corporation formed under the direction of the court; the return of foreclosed upon properties to their former owners; and enjoining VIA from paying the attorney fees of its officers and directors in this or related suits.

The plaintiffs did not join the original development corporation, Horizon, in this suit. In a separate action, the Federal Trade Commission (FTC) in May 1981, found that Horizon's representations to the public that its land was an excellent, financially risk-free, short-term investment were false, misleading and deceptive, and in violation of federal law. The FTC severely restricted further promotion and sales by Horizon and ordered that Horizon spend not less than $45,000,000 for improvements in the subdivisions within twenty years. In calling for the dissolution of VIA in the present suit, the plaintiffs restate the findings of the FTC, recall the central role of HCIA and the indentures in Horizon's sales program, and make the statement that Horizon's actions are attributable "by operation of law" to HCIA/VIA. Dissolution is also requested on the basis of VIA's failure of purpose, and due to changed circumstances.

The district court denied VIA's motion to join Horizon as a necessary party to this action. Later VIA proceeded to name Horizon as a defendant in a third-party complaint seeking contribution, indemnity, and any other available form of relief from Horizon. The third-party complaint was dismissed on Horizon's motion.

**Impleader under SCRA 1986, 1–014(A).** The issue on appeal is whether VIA stated a third-party claim against Horizon under Rule 1–014(A) of the New Mexico Rules of Civil Procedure. Rule 1–014(A) permits a defendant to implead a person "who is or may be liable to him for all or part of the plaintiff's claim against him." SCRA 1986, 1–014(A). To come within the scope of Rule 1–014(A), the third-party's potential liability must in some way be dependent upon the outcome of the main claim against the defendant. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1446 (1971) (discussing Fed.R.Civ.P. 14, the federal counterpart to SCRA 1986, 1–014); *United States v. Olavarrieta,* 812 F.2d 640 (11th Cir.1987); *Southeast Mortgage Co. v. Mullins,* 514 F.2d 747 (5th Cir.1975). Traditionally, derivative or secondary liability to the defendant, on the basis of indemnity, contribution, or some other theory, is considered to be essential. *Grain Dealers Mutual Insurance Co. v. Reed,* 105 N.M. 586, 734 P.2d 1269 (1987); *see also* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1446 (1971). We have, however, relaxed the traditional rule in negligence suits in order to allow the continued impleader of concurrent tortfeasors whose liability for contribution was abolished with the adoption of comparative negligence. *Tipton v. Texaco, Inc.,* 103 N.M. 689, 712 P.2d 1351 (1985) (allocation of comparative negligence among concurrent tortfeasors assures the complete disposition of the underlying suit).

Still, the requirement that the third-party's potential liability be dependent upon the outcome of the main claim remains the general rule and the central concept involved in third-party practice. The rule was not intended to be used to resolve every controversy between the defendant and a third-party which may have some relationship with the transaction at issue in the original complaint. *Grain Dealers,* 105 N.M. at 587, 734 P.2d at 1271; *see also First Nat'l Bank of Santa Fe v. Espinoza,* 95 N.M. 20, 618 P.2d 364 (1980) (dismissal proper where third-party complaint introduced only collateral issues not dependent upon resolution of issues in main claim). Nor does the rule create any new right of action. Impleader is only a procedural device. In the event that the plaintiff's suit is successful, the right to

relief in favor of a third-party plaintiff must exist under principles of substantive law. 6 C. Wright & A. Miller, *Federal Practice and Procedure*, §§ 1442, 1446 (1971). But whether a third-party claim is predicated upon express or implied indemnity, contribution, breach of warranty, subrogation, negligence or some other theory is irrelevant. *Id.* at § 1446. However, if there is no right to relief under the substantive law, impleader is improper. *Id.; see also Valley Landscape Co. v. Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977); *Brown v. Spokane County Fire Protection Dist. No. 1*, 21 Wash.App. 886, 586 P.2d 1207 (1978).

**Lack of a substantive basis for relief.** The trial court dismissed the third-party complaint concluding that the plaintiffs "do not seek any relief against [VIA] for which a claim for contribution or indemnity exists." These two legal theories were the only ones argued to the trial court. We are not persuaded on appeal that VIA has shown that in the event the plaintiffs' suit is successful, VIA has a right to relief from Horizon.

▪ VIA argues that had the plaintiffs sued Horizon directly, they would have had little trouble in stating a claim, *see, e.g., Register v. Roberson Constr. Co.*, 106 N.M. 243, 741 P.2d 1364 (1987) (homeowner's suit for developer's failure to complete project as promised), and, at the same time, VIA has standing to assert such a claim on behalf of the association membership. *See, e.g., Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.*, 77 N.M. 730, 427 P.2d 249 (1967). However, neither of these factors establishes the secondary liability required under the rules of impleader. The third-party's potential liability to the plaintiff, or his potential liability to the defendant which is not dependent upon the resolution of the main claim, do not form the basis for impleader. *See Grain Dealers*, 105 N.M. at 587, 734 P.2d at 1270; *Espinosa*, 95 N.M. at 21, 618 P.2d at 365.

▪ Next, VIA characterizes the plaintiffs' complaint as largely a recitation of the plaintiffs' grievances against Horizon, and makes much of the charge in the plaintiffs' complaint that Horizon's misdeeds are attributable to HCIA/VIA "by operation of law." VIA's argument on this point seems to be that since the plaintiffs seek to impute Horizon's supposed liability to VIA, VIA is entitled to implead Horizon, the actual wrongdoer, under principles of indemnification. *See Rio Grande Gas Co. v. Stahmann Farms, Inc.*, 80 N.M. 432, 457 P.2d 364 (1969) ("A common example [of the right to indemnity] is a case where a blameless employer recovers from a negligent employee, after the employer has been held liable to the injured third person upon the theory of respondeat superior"). However, neither the plaintiffs nor VIA have ever articulated a legal theory by which VIA can be made liable for Horizon's misdeeds. Unsupported legal conclusions need not be accepted by this Court. *See C & H Constr. & Paving, Inc. v. Foundation Reserve Ins. Co.*, 85 N.M. 374, 512 P.2d 947 (1973); *McNutt v. New Mexico State Tribune Co.*, 88 N.M. 162, 538 P.2d 804 (Ct. App.1975). Since there is no basis for claiming that the plaintiffs can impute liability to VIA, this argument in support of the third-party claim must fail.

▪ Finally, the relief the plaintiffs have requested is significant: the dissolution of VIA, the invalidation of the indentures, or the return of the assessment funds. VIA asserts that if it is enjoined from collecting the assessments, or ordered to turn them over to another person, Horizon should be required to compensate VIA with money damages. The substantive basis for this asserted right, however, has not been articulated by VIA. For instance, we have been cited to no authority to show that the termination of a nonprofit corporation for its failure of purpose, changed circumstances, or the role it may have independently played in the machinations of third persons who caused its incorporation, gives rise to a claim for relief against those third persons. Perhaps VIA may later establish the basis for such a claim. *Cf. Tate v. Frey*, 735 F.2d 986 (6th Cir.1984) (Third party action against state corrections officials proper in a civil rights suit against

county officials by prison inmates seeking injunctive relief against overcrowding, where the responsibility under state law for the incarceration of felons rests with the state, and where without joinder of state officials complete relief would be impossible to grant). The dismissal of the third-party claim has no effect on VIA's right to bring such a suit. We conclude here simply that VIA, at this point, has not presented this Court with any legal theory which would form the basis of a right to relief under the substantive law. Impleader should be denied when the substantive basis for relief appears doubtful to the court, and where the presence of a third party would complicate rather than simplify the determination of the case. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1443, 1446, 1451 (1971); 3 J. Moore, *Moore's Federal Practice* ¶¶ 14.05, 14.10 (2d ed. 1988). The acknowledged impact on this suit of impleading Horizon would be to further complicate and confuse already protracted and complex multiparty litigation.

We wish to emphasize that the justification offered for the relief which the plaintiffs have requested is based almost entirely on the active misconduct of HCIA/VIA and its board of directors. And neither VIA, nor the plaintiffs in their complaint, allege that Horizon actually *controlled* HCIA or VIA, that HCIA or VIA acted as Horizon's agent in these matters. It seems that whatever role HCIA/VIA may have played in Horizon's development scheme, it still played that role as an independent nonprofit corporation for which Horizon bore no responsibility. Even if the relationship between Horizon and HCIA/VIA can be said to be one of principal and agent (a matter we do not decide), an agent has no claim for indemnity where he is the party primarily at fault. *See Dessauer v. Memorial Gen. Hosp.*, 96 N.M. 92, 628 P.2d 337 (Ct.App.1981); *see also*, 42 C.J.S. *Indemnity* § 20 (1944).

**Discretion to dismiss a third-party claim.** VIA also asserts that since the third-party claim was filed within 10 days after VIA served its original answer, the trial court was without discretion to dismiss the claim. It is true that the filing of third-party complaint is a matter of right, not dependent upon the leave of court, if accomplished within the time specified in Rule 1–014. The provision was intended to encourage the defendant to implead third parties as early as possible. However, any party may move to strike the third-party claim, SCRA 1986, 1–014, and whether or not to dismiss an otherwise proper third-party complaint timely filed continues to be a question addressed to the sound discretion of the trial court. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1443 (discussing grounds for dismissal or severance of valid third-party claims); *see also Nikolous v. Superior Court,* 157 Ariz. 256, 756 P.2d 925 (1988). To refuse to dismiss a third-party complaint which did *not* meet the standards of Rule 1–014, however, would be an abuse of discretion, *Grain Dealers Mutual Ins. Co. v. Reed,* 105 N.M. 586, 734 P.2d 1269 (1987), as would be a dismissal based upon an erroneous view of the substantive law. *Southern Ry. v. Fox,* 339 F.2d 560 (1964); *see also City of Elkhart v. Middleton,* 265 Ind. 514, 356 N.E.2d 207 (1976) (preferring to call such a dismissal "clear error" outside the court's discretionary power).

For the above reasons, we hold that the trial court did not abuse its discretion in dismissing the third-party complaint. The judgment of the trial court is affirmed.

IT IS SO ORDERED.

STOWERS and BACA, JJ., concur.