893 P.2d 450

**Kenneth P. YELIN and Jacqueline Yelin, Defendants–and–Cross–Claimants–Appellants,**

v.

**CARVEL CORPORATION and Franchise Stores Realty Corporation, Cross–Defendants–Appellees.**

No. 21513.

Supreme Court of New Mexico.

March 6, 1995.

Rehearing Denied April 5, 1995.

Charles G. Berry & Associates, P.A., Charles G. Berry, Albuquerque, for appellants.

Guebert & Yeomans, P.C., Richard Yeomans, Albuquerque, for appellees.

## OPINION

FROST, Justice.

Defendants–Appellants, Kenneth and Jacqueline Yelin (the Yelins), appeal from the district court's order dismissing their third-party complaint against Third–Party–Defendant–Appellee, Carvel Corporation (Carvel). The district court held that the third-party complaint was improperly filed under SCRA 1986, 1–014(A). We affirm.

## FACTS

Carvel is in the business of licensing individuals to manufacture and sell ice cream and frozen dessert products under the Carvel name. In December 1986 the Yelins entered into a franchise agreement with Carvel to sell ice cream products in Albuquerque. As part of the agreement, Carvel's wholly owned subsidiary, Franchise Stores Realty Corporation, leased retail space in Albuquerque from George Doolittle and Jeanette Doolittle Ingram (the Doolittles). Franchise Stores Realty Corporation then assigned its entire interest in the lease to the Yelins as owners of the franchise. The term of the lease was for a period of nine years and ten months, beginning on February 1, 1987, and its provisions included payments for rent, taxes, insurance, and other miscellaneous charges. The Yelins operated the Carvel franchise for approximately 3½ years. Over the course of this period, however, the franchise lost money, and, ultimately, the Yelins were forced to close the business.

In September 1991 the Doolittles filed suit against the Yelins for breach of the lease agreement. The Doolittles claimed that the Yelins breached the lease by failing to continue to operate their business at the leased premises, and by failing to pay rent and their proportionate share of taxes, insurance, and other costs. The Yelins, in turn, filed a third-party complaint against Carvel seeking to recover, in addition to other damages, all amounts adjudged against them in the Doolittles' suit. The Yelins claim that Carvel's negligent misrepresentations induced them to enter the franchise agreement and that Carvel breached the terms of the franchise agreement by failing to provide advertising and necessary supplies on a timely basis. The Yelins argue that Carvel's failures and wrongful conduct interfered with their ability to make a profit and thereby precluded them from fulfilling their obligations under the lease agreement.

Carvel moved to dismiss the third-party complaint on the grounds that it was improper under SCRA 1–014(A), which governs third-party practice. The district court granted the motion to dismiss, finding that Carvel's potential liability to the Yelins was not dependent on the outcome of the Doolittles' suit. The Yelins now appeal the dismissal.

## DISCUSSION

■ The issue on appeal is whether the Yelins may properly implead Carvel under SCRA 1–014(A) of the New Mexico Rules of Civil Procedure. SCRA 1–014(A) allows a defendant to implead "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." This Court has consistently interpreted this requirement to mean that the third party's potential liability must be derivative of or dependent upon the outcome of the primary claim against the defendant. *Yates Exploration, Inc. v. Valley Improvement Ass'n*, 108 N.M. 405, 408, 773 P.2d 350, 353 (1989); *Grain Dealers Mut. Ins. Co. v. Reed*, 105 N.M. 586, 587, 734 P.2d 1269, 1270 (1987). *See also* 6 Charles A. Wright et al., *Federal Practice and Procedure* § 1446 (2d ed.1990) (noting that the secondary or derivative liability notion is central to impleader); *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir.1967) (noting that Fed-

eral Rules of Civil Procedure require derivative liability).

Traditionally, we have held that derivative or secondary liability to the defendant, on the basis of indemnity, contribution or some similar theory, is essential for maintaining a third-party action. *Yates Exploration,* 108 N.M. at 408, 773 P.2d at 353; *Grain Dealers,* 105 N.M. at 587, 734 P.2d at 1270; *cf. Tipton v. Texaco, Inc.,* 103 N.M. 689, 693, 712 P.2d 1351, 1355 (1985) (allowing continued impleader of concurrent tortfeasors, whose liability for contribution was abolished after the adoption of comparative negligence). Thus, we note that although SCRA 1–014 should be interpreted liberally to facilitate judicial economy, *Tipton,* 103 N.M. at 693, 712 P.2d at 1355; 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice* ¶ 14.07[1] (2d ed.1994), "it was not intended to be used to resolve every controversy between the defendant and a third-party which may have some relationship with the transaction at issue in the original complaint." *Yates Exploration,* 108 N.M. at 408, 773 P.2d at 353.

The only question in this appeal is whether Carvel's potential liability is derivative of or independent from the Doolittles' main claim against the Yelins. The Yelins argue that a defendant sued for breach of contract has a right of implied indemnity against a third person whose wrong caused the defendant's breach. They claim that Carvel's wrongful conduct and breach of the franchise agreement made it impossible for them to fulfill their obligations under the lease agreement and that Carvel's actions give rise to a claim for implied indemnity.

New Mexico courts have allowed an action for indemnification in several situations. *See Amrep Southwest, Inc. v. Shollenbarger Wood Treating, Inc. (In re Consol. Vista Hills Retaining Wall Litigation),* 119 N.M. 542, 546, 893 P.2d 438, 441–42 (1995). Traditional indemnification is based on an independent, preexisting legal relationship, and the right to indemnification typically arises from an express or implied contract. *Id.* New Mexico courts have also held that indemnification can arise by operation of law to prevent an inequitable result. Consequently, we

have applied equitable indemnity in cases involving vicarious or derivative liability, "as when an employer must pay for the negligent conduct of its employee under the doctrine of respondeat superior or when a person is directed by another to do something that appears innocent but is in fact wrongful." *Id.* We have also applied indemnification principles "in both negligence and strict liability cases involving persons in the chain of supply of a product, and in breach of warranty cases." *Id.* (citations omitted). In addition, this Court recently recognized the theory of proportional indemnification, which applies when both a defendant and a third party would be concurrently liable to the plaintiff but, because of the plaintiff's choice of remedy, the liability is placed only on the former and cannot be prorated between the wrongdoers. *Id.* at 551, 893 P.2d at 447–49. The Yelins' indemnity claim, however, does not implicate any of these designated theories; nor do the underlying facts of this case fall within one of the aforementioned situations in which we have applied indemnity principles in order to avoid inequitable results.

Instead, the Yelins rely on *University Ford v. Marlin,* 87 N.M. 203, 531 P.2d 937 (1974) for support of their proposition that equitable indemnity also arises when a defendant's breach is caused by the wrongful acts of a third person. In *University Ford,* the plaintiff sued the defendant, Louis Motors, for failing to turn over the proceeds of a sale Louis Motors made on the plaintiff's behalf. Louis Motors was unable to turn over the proceeds because the third-party defendant bank had negligently allowed another individual to cash the proceeds check which had been issued in defendant's name. *Id.* at 204–05, 531 P.2d at 938–39. The *University Ford* Court upheld the trial court's finding that the bank was liable to Louis Motors for the loss of the proceeds under the circumstances. *Id.* at 205, 531 P.2d at 939.

We are not persuaded that *University Ford* supports the Yelins' position in this matter. An examination of the opinion in *University Ford* does not reveal the legal theory or rationale which the *University Ford* court employed in arriving at its conclu-

sion. The Court never focused upon or discussed the principles of indemnification. In our view, all that can be said of *University Ford* is that it held that the bank was negligent in cashing a check without proper authorization and endorsement, and therefore the bank owed the lost proceeds to its customer on whose account the check was drawn. In view of the potential for confusion which is inherent in *University Ford*, to the extent that it can be read as inconsistent with this opinion, it is overruled.

The Yelins' claim for indemnity is much closer to the claim the court in *Southeast Mortgage Co. v. Mullins*, 514 F.2d 747 (5th Cir.1975), rejected as improper under Rule 14 of the Federal Rules of Civil Procedure, the federal counterpart to SCRA 1–014. In *Southeast Mortgage*, the Department of Housing and Urban Development (HUD) helped the defendant, Mullins, take out a loan to purchase a home. After Mullins defaulted on the loan and the mortgage company instituted foreclosure proceedings against Mullins, she attempted to implead HUD. Mullins alleged that HUD had violated the National Housing Act by failing to enforce certain regulations thereby causing the foreclosure proceeding. *Id.* at 748–49. The court noted,

> The sole connection between the [main claim and the third-party claim] is the contention that, but for HUD's failure to adopt and enforce adequate regulations, there would have been no foreclosure proceedings.

> The suggestion that a separate and independent claim can be made the proper subject of a third party complaint because, but for the violation of duty alleged the main claim would not have matured, has been rejected by this and other courts.

*Id.* at 750. After examining two related cases, the court concluded

> The common thread running through these cases, and our own, is that the right or duty alleged to have been violated in the third party complaint does not emanate from the main claim but exists wholly independent of it. In each, the nexus with the principal action is not that it establishes

the right to relief, but merely the need for relief.

*Id.*

*National Bank of Canada v. Artex Industries, Inc.*, 627 F.Supp. 610 (S.D.N.Y.1986), also addressed the issue before us. In *Artex*, the plaintiff bank paid a supplier on defendant Artex's behalf and then mistakenly credited the payment back to Artex's account. The bank then sued Artex for return of the mistaken payment. Artex impleaded Seaport, the corporation for whom it had acquired the supplies, claiming that Seaport had not paid Artex an outstanding balance on the construction contract. *Id.* at 612. The *Artex* court found that the "minimal overlap" between the main claim and the disputes involved in the third-party claim was insufficient to allow the latter to stand. *Id.* at 613. "The outcome of the third-party claim must be contingent on the outcome of the main claim, and here Seaport's liability to Artex under their contract involves many issues unconnected with NBC's claim for the return of a mistaken payment." *Id.* The court dismissed the impleader claim without prejudice as improper under Rule 14 of the Federal Rules of Civil Procedure. *Id.*

The court in *AAA Excavating, Inc. v. Francis Construction, Inc.*, 678 S.W.2d 889, 894 (Mo.Ct.App.1984), similarly dismissed defendant's claim for indemnity that was based on third-party defendant's alleged negligent misrepresentation. In *AAA Excavating*, the excavating company brought suit against the general contractor for unpaid work. The contractor, in turn, impleaded a consultant who the contractor claimed was negligent in performing soil samples and compaction tests. The contractor argued that it was unable to pay AAA Excavating because it had spent the funds on other repairs necessitated by the consultant's misrepresentations regarding soil stability. *Id.* at 892. The court dismissed the claim, noting, "If a third party plaintiff could proceed and recover against the third party defendant even if the third party plaintiff were to win in the suit brought by the plaintiff the petition would not be covered by [the rules governing third-party practice]." *Id.* at 894. The court held: "Regardless of the outcome of AAA Excavat-

ing's claim, defendant will still have a claim against [third-party defendant] for all of its claimed damages.... Defendant's claim is in no way dependent upon the disposition of plaintiff's petition against defendant." *Id.* at 892.[1]

In the case at bar, the Yelins' claim against Carvel also involves the resolution of many issues legally and factually unconnected with the Doolittles' claim, and similarly is not contingent upon the outcome. The Yelins are asserting a claim against Carvel for the amounts they are alleged to owe the Doolittles, as items of damage for Carvel's alleged wrongful conduct and misrepresentations which induced the Yelins to enter into the lease. This is not really a claim that the third-party defendant is liable for the rent due from the Yelins; it is a claim that is independent of the lease itself.

The Yelins maintain that their claim against Carvel is derivative of the Doolittles' claim because the main claim will determine whether the Yelins have been damaged by Carvel's actions. However, this argument mistakes the nature of derivative liability. The only effect resolution of the Doolittles' claim might have on the Yelins' claim will be to establish the amount of a portion of the damages that Carvel may owe if they are found to be liable to the Yelins. Carvel's actual liability is entirely separate from the Yelins' breach of the lease agreement. If the Yelins' allegations against Carvel are found to be true, the Yelins would be entitled to recover damages for breach of contract or misrepresentation regardless of whether the

Doolittles recover against the Yelins. Thus, while the Yelins' claim against Carvel may be transactionally related to the Doolittles' main claim, it is not derivative of that claim and is not the proper subject of a third-party complaint. In addition, the presence of Carvel as a party in this matter would complicate rather than simplify resolution of the issues involved. *See Yates Exploration,* 108 N.M. at 410, 773 P.2d at 355.

Accordingly, the district court properly dismissed the third-party complaint for failing to demonstrate derivative liability as required under SCRA 1–014. Indeed, "[t]o refuse to dismiss a third-party complaint which did *not* meet the standards of Rule 1–014 ... would be an abuse of discretion." *Id.* We note that the Yelins are still free to pursue their claims against Carvel in a separate action if they so choose.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

IT IS SO ORDERED.

BACA, C.J., and RANSOM and MINZNER, JJ., concur.

FRANCHINI, J., dissenting.

FRANCHINI, Justice (dissenting).

I respectfully dissent. The trial court appears to have confused the proof of liability requirement. That court dismissed the Yelins' third-party claim on the premise that *all*

---

1. *See also United States v. Olavarrieta,* 812 F.2d 640, 642–43 (11th Cir.) (holding that under Florida law defendant's claim against third party for fraud and breach of contract in failing to award defendant a J.D. degree was independent of plaintiff's suit for repayment of defendant's student loans), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987); *Rozelle v. Connecticut Gen. Life Ins. Co.,* 471 F.2d 29, 30 (10th Cir.1972) (finding that "[t]he obligation of [defendant] to pay was not conditioned upon the actions of the [third-party defendants]," and that resolution of the main claim "did not ... preclude [defendant] from recovery of any damage which he might have sustained if able to show wrongdoing in the exercise of [third-party defendants] reserved timber rights."), *cert. denied,* 411 U.S. 921, 93 S.Ct. 1549, 36 L.Ed.2d 314 (1973); *Jobe v. King,* 129 Ariz. 195, 197, 629 P.2d 1031,

1033 (App.1981) (dismissing as too tenuous to support indemnity under Rule 14(a) defendant's third-party claim alleging that neighbor's wrongful act made it financially impossible for defendant to pay rent); *Robertson v. TWP, Inc.,* 656 P.2d 547, 551 (Wyo.1983) (finding that third-party defendant's alleged wrongful acts were too remote a cause of defendant's injury to form the basis for indemnity). *But see Bear Creek Planning Comm. v. Title Ins. & Trust Co.,* 164 Cal. App.3d 1227, 211 Cal.Rptr. 172, 178 (1985) (noting that under California law, implied contractual indemnity is based upon the premise that a contractual obligation carries an implied promise to indemnify for foreseeable damages resulting to the indemnitee from the indemnitor's improper performance), *disapproved on other grounds,* 50 Cal.3d 1012, 269 Cal.Rptr. 720, 791 P.2d 290 (1990).

of Carvel's potential third-party liability to the Yelins was not premised on the first-party liability established by proof of the breach of lease. Our rules do not require that. Joinder simply requires that the first-party defendant allege that a third-party is liable to him for "part of the plaintiff's claim". SCRA 1986, 1–014(A). Any additional third-party claims are entertained by reason of judicial economy and are collateral to the claim that satisfied the joinder requirement.

The business's failure undisputedly was the direct cause of the breach of the lease, thus the claim is both transactionally related to and derivative of the major first-party claim. In my opinion it is not, as the majority suggests, "entirely separate from the Yelins' breach of the lease agreement." The jury can determine to what degree or percentage, if any, Carvel caused the business's failure and the resulting inability to pay the rents due under the lease. Obviously, if the Doolittles fail to prove that the Yelins were liable for damages for breach of the lease, the Yelins' third-party allegations of damages based on liability under the lease would also fail. The Yelins satisfied the requirement of stating facts sufficient to show that Carvel had *"potential* liability to the defendant which is ... dependent upon the resolution of the main claim." *Yates Exploration*, 108 N.M. at 409, 773 P.2d at 354. Unlike the defendant in *Yates Exploration*, the Yelins have established a substantive basis for relief that is transactionally connected to the first-party claim.

The cases cited by the opinion are all factually distinguishable. I respectfully submit that this case is not "closer to" *Southeast Mortgage*. There, the defendant did not allege that the third-party defendant's negligence caused her to breach her contract—she simply alleged that HUD failed to provide limitations to keep the first-party plaintiff from suing her for breach of contract in the first place. *See* 514 F.2d at 748–49. Thus, she did not properly allege facts showing that HUD was liable for part of the mortgagee's claim against her.

In *Artex* the suit was for return of a mistaken payment, not for breach of a contract. The defendant could not allege any acts by a third party that had anything to do with the mistake, thus its claim against the third-party defendant was not transactionally related. Likewise, the defendants in *AAA Excavating, Olavarrieta, Jobe,* and *Robertson* could not show that the alleged wrongful acts were transactionally related.

In this case, Carvel was originally primarily liable for the lease and the Doolittles' claim against the Yelins was based on the assignment of the lease to them. The Yelins asserted that the lease assignment was obtained by Carvel's fraudulent and negligent misrepresentations and that the original lease was obtained for the sole purpose of inducing individuals to enter into franchise agreements with Carvel. The Yelins further alleged that the Doolittles knew that performance of the lease depended upon fulfillment of Carvel's obligations under the franchise. In its answer brief Carvel claims that the Yelins did not allege that Carvel is primarily liable. However, it seems to me that the Yelins' claims that the assignment was void ab initio because of fraud *does* give rise to the possibility that Carvel could be found primarily liable under the original lease. I believe the trial court improperly dismissed the Yelins' claims against Carvel. I would reverse the trial court.