2007-NMCA-142

170 P.3d 998

**NEW MEXICO PUBLIC SCHOOLS INSURANCE AUTHORITY,**
Plaintiff–Appellant,

v.

**ARTHUR J. GALLAGHER & CO.,** Arthur J. Gallagher & Co. (U.K.) Limited; and International Special Risk Services, Inc., Defendants–Appellees,

and

Sphere Drake Insurance Co., PLC; and CNA Reinsurance of London, LTD, Defendants.

No. 26,251.

Court of Appeals of New Mexico.

Aug. 20, 2007.

Certiorari Granted, No. 30,643, Oct. 29, 2007.

Nancy E. Nickerson, Paul D. Mannick, Coppler & Mannick, P.C., Santa Fe, NM, for Appellant.

Douglas A. Baker, Zachary L. McCormick, Martha G. Brown, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, for Appellees.

## OPINION

VIGIL, Judge.

{1} Plaintiff, New Mexico Public Schools Insurance Authority (the Authority), appeals the district court's order dismissing its claim against Defendants Arthur J. Gallagher & Co., Arthur J. Gallagher & Co. (U.K.) Limited, and International Special Risk Services, Inc. (collectively, Gallagher). The district court determined that the Authority's complaint stated a claim for professional negligence that was barred by the statute of limitations. The Authority argues that it stated a claim for indemnification that was not barred by the statute of limitations. We hold that the Authority's claim is one for professional negligence not for indemnification. We therefore affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} The Authority is a state agency that provides risk insurance to public schools pursuant to the Public School Insurance Authority Act (the Act), NMSA 1978, §§ 22–29–1 to –11 (1986, as amended through 2005). From 1986 to 1991, the Authority provided insurance coverage to Moriarty Municipal Schools (Moriarty), including coverage for embezzlement loss. The Authority performs a dual role in providing insurance for school districts. It acts as an insurer, covering losses up to a certain amount through a self-insured risk retention. Additionally, under the Act, the Authority is authorized to negotiate and obtain insurance policies from private insurers to provide additional benefits to school districts beyond that provided by the Authority's self-insured retention. See § 22–29–7(E). The insurance provided by the Authority to Moriarty during this period was two-tiered, with the Authority responsible for a first layer of self-insured retained coverage, and a layer of excess coverage provided by policies issued by private insurers. See id. The Authority hired Gallagher to draft policies to provide the second-tier coverage to Moriarty from 1986 to 1991. These policies were underwritten by Lloyd's of London (London policies). Pursuant to its regulations, the extent of the Authority's self-insured retention was determined by the terms of the second-tier policies in effect at that time. See Moriarty Mun. Sch. v. Pub. Sch. Ins. Auth., 2001–NMCA–096, ¶ 7, 131 N.M. 180, 34 P.3d 124.

{3} In 1994, Moriarty discovered that one of its employees had embezzled $610,452.99 from the district over a period of years from 1986 to 1994, and made claims against its insurers. The Authority paid Moriarty $250,000 from its self-insured retention under the terms of policies in effect from 1991 to 1994. However, the Authority refused to cover any crime losses that occurred between 1986 and 1991, when the London policies were in effect. The Authority's position was that it was not responsible under its self-insured retention because the second-tier London policies in effect at the time did not

cover crime losses for claims made more than twelve months after the last London policy terminated. Since Moriarty made no claims during the years that the London policies provided second-tier coverage, the Authority's self-insured retention did not cover the losses for 1986 to 1991.

{4} In 1996, Moriarty sued the Authority seeking reimbursement under the Authority's self-insured retention for the losses suffered from 1986 to 1991, when the London policies were in effect, and the parties ultimately submitted the case to arbitration. The arbitrator determined that Moriarty was entitled to reimbursement from the Authority for crime losses suffered from 1986 to 1991. The arbitrator found that the Authority was a co-insurer for the London policies, and was therefore responsible for the portion of the claims covered by the self-insured retention. The arbitrator also determined that the amounts sought per policy were within the limits of the self-insured retention, and the Authority was solely responsible for payment under its self-insured retention coverage. Gallagher was not a party to the litigation or to the arbitration.

{5} The arbitration decision was issued on February 20, 2004. In January 2005, the Authority sued Gallagher seeking the amount it was required to pay to Moriarty, alleging that Gallagher negligently drafted the London policies in violation of its professional duty, and that the Authority suffered the adverse arbitration judgment as a result. Gallagher moved to dismiss under Rule 1–012(B)(6) NMRA arguing that this was a cause of action for professional negligence that was barred by the statute of limitations. The district court granted Gallagher's motion to dismiss, but granted the Authority leave to file an amended complaint.

{6} In its amended complaint, the Authority labeled its claim as one for indemnification based upon Gallagher's creation and sale of a defective insurance policy. The Authority alleged that it suffered the adverse arbitration decision as a result of defects in the insurance policies drafted and sold by Gallagher. The Authority alleged that it had agreed with Gallagher that the policies would be drafted to protect the Authority from any obligation to pay for crime losses discovered more than twelve months after the last London policy terminated. The Authority alleged that, despite Gallagher's knowledge of the Authority's expectations for the policy, Gallagher included a carelessly drafted addendum with the policy that was construed by the arbitrator to subject the Authority to additional payments under its self-insured retention. The Authority alleged that as a result of Gallagher's failure to provide the insurance that it promised the Authority, Gallagher was required to indemnify the Authority for the payments made to Moriarty.

{7} Gallagher again moved to dismiss under Rule 1–012(B)(6), arguing that the amended complaint failed to state a claim under any theory of indemnification recognized in New Mexico and asserting that the Authority's claim remained in essence a claim for professional negligence. The Authority argued that its cause of action was not for professional negligence but for indemnification, and that the cause of action was within the statute of limitations. The district court ruled that the Authority's amended complaint stated a cause of action for professional negligence that was barred on its face by the statute of limitations, and dismissed. The Authority appeals.

## II. DISCUSSION

{8} On appeal, the Authority does not disagree that under the test stated in *Sharts v. Natelson*, 118 N.M. 721, 724, 885 P.2d 642, 645 (1994), and *Wiste v. Neff & Co.*, 1998–NMCA–165, ¶ 8, 126 N.M. 232, 967 P.2d 1172, its claim against Gallagher accrued in 1996. Nor does the Authority argue that *Sharts* and *Wiste* do not apply to determine when a claim for professional negligence accrues. Rather, the Authority argues that *Sharts* and *Wiste* are not applicable in this case because its claim against Gallagher is for indemnification, not for professional negligence. The Authority further argues that a cause of action for indemnification does not accrue until the indemnitee's liability to a third party is fixed and determined, in this case in 2004, when the Authority received the adverse arbitration decision in the Moriarty lawsuit and paid the judgment. Accordingly,

the Authority argues that its claim against Gallagher is not barred by the four-year statute of limitations. *See* NMSA 1978, § 37–1–4 (1880).

{9} The issue for us then is whether the Authority's amended complaint stated a cause of action for indemnification rather than professional negligence or malpractice. We hold that it did not. In its amended complaint, the Authority alleged that Gallagher knew that the language it drafted would determine the amount that the Authority was required to pay for crime losses under its self-insured retention. The Authority alleged that Gallagher agreed that the London policies would be drafted to protect the Authority from liability for crime losses discovered more than twelve months after the last London policy terminated. The Authority alleged that Gallagher drafted and sold policies containing carelessly drafted language, and that, as a result, it received the adverse arbitration decision. The Authority stated that it relied on Gallagher's knowledge and expertise in drafting and brokering insurance policies. The Authority also alleged that as a result of Gallagher's failure to provide the insurance that it promised, Gallagher was required to indemnify the Authority for the payments made to Moriarty.

{10} "Traditional indemnification is based on an independent, preexisting legal relationship, and the right to indemnification typically arises from an express or implied contract." *Yelin v. Carvel Corp.*, 119 N.M. 554, 556, 893 P.2d 450, 452 (1995); *In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. 542, 545–46, 893 P.2d 438, 441–42 (1995) (same); *see also* 42 C.J.S. *Indemnity* § 3 (2007) (stating that the right to indemnity and the corresponding obligation to indemnify generally spring from express or implied contract). Additionally, indemnification can arise by operation of law to prevent an inequitable result. *Yelin*, 119 N.M. at 556, 893 P.2d at 452; *see also In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. at 546, 893 P.2d at 442 (stating that a right to indemnification may arise without agreement to prevent a result that is unjust or unsatisfactory).

{11} The Authority did not allege an express or implied contract to indemnify as the basis for its indemnity claim against Gallagher in either its amended complaint or its responses to Gallagher's motions to dismiss. Although the Authority argues on appeal that its indemnification theory is based on an express contractual agreement between the parties to indemnify, we do not consider this argument because it was not made in the district court. *See Moriarty Mun. Sch.*, 2001–NMCA–096, ¶ 16, 131 N.M. 180, 34 P.3d 124 (stating that on review of the district court's grant of a Rule 1–012(B)(6) motion, we do not consider any evidence outside of the pleadings); *see also In re Aaron L.*, 2000–NMCA–024, ¶ 27, 128 N.M. 641, 996 P.2d 431 ("This Court will not consider and counsel should not refer to matters not of record in their briefs."). Additionally, we reject the Authority's argument that its contention that it had a contractual relationship with Gallagher is sufficient to state a claim for indemnification based on contract. The Authority alleged in its amended complaint that it had an agreement with Gallagher to provide a certain type of insurance policy; it did not allege that Gallagher agreed, expressly or impliedly, to indemnify the Authority.

{12} In the absence of a contractual basis for indemnification, New Mexico recognizes actions for indemnity by operation of law in limited circumstances in order to prevent an inequitable result. "Consequently, we have applied equitable indemnity in cases involving vicarious or derivative liability, 'as when an employer must pay for the negligent conduct of its employee under the doctrine of respondeat superior or when a person is directed by another to do something that appears innocent but is in fact wrongful.'" *Yelin*, 119 N.M. at 556, 893 P.2d at 452 (quoting *In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. at 546, 893 P.2d at 442). New Mexico has also recognized a right for equitable indemnification in negligence and strict liability cases involving persons in the chain of supply of the product, and breach of warranty cases. *Id.* Additionally, we recognize a theory of proportional indemnification "when both a defendant and a third party would be concurrently liable to

the plaintiff but, because of the plaintiff's choice of remedy, the liability is placed only on the former and cannot be prorated between the wrongdoers." *Id.* The Authority's claim against Gallagher does not implicate any of these theories in which we have recognized an implied right to indemnification. Additionally, the facts underlying the Authority's claim against Gallagher do not fit the situations in which we have recognized a right to indemnification in order to prevent an inequitable result. *See id.*

{13} The Authority relies in part on the terms of Rule 1–014(A) NMRA, which governs impleader. Rule 1–014(A) provides that a defendant in a civil action may implead a third party "who is or may be liable to him for all or part of the plaintiff's claim against him." The Authority argues that because it pled that Gallagher is or may be liable for all of the judgment it paid to Moriarty, it has stated a cause of action for indemnification under Rule 1–014(A). We understand the Authority to argue that because it could have impleaded Gallagher as a third party in the Moriarty action under Rule 1–014(A), it has a cause of action for indemnification against Gallagher. However, we disagree that Rule 1–014(A) supports the Authority's argument for indemnification. Rule 1–014(A) is a procedural device only, and it does not create a right of action. *Yates Exploration, Inc. v. Valley Improvement Ass'n, Inc.*, 108 N.M. 405, 408–09, 773 P.2d 350, 353–54 (1989). In order to implead a third party under Rule 1–014(A), the party must show an underlying right to relief under substantive law. "Traditionally, we have held that derivative or secondary liability to the defendant, on the basis of indemnity, contribution or some similar theory, is essential for maintaining a third-party action." *Yelin*, 119 N.M. at 556, 893 P.2d at 452; *see also Yates Exploration*, 108 N.M. at 408, 773 P.2d at 353 (stating that where there is no right to relief under substantive law, impleader is improper). The Authority failed to state a viable claim for the indemnification under any set of facts the Authority proposes. Thus, Rule 1–014(A) does not save the claim.

{14} The Authority also argues that it has a claim for indemnification from Gallagher based on derivative liability. The Authority argues that its claim against Gallagher is derivative of the Moriarty lawsuit, and it therefore had a right of equitable indemnification against Gallagher for the amounts it was required to pay to Moriarty. However, we do not believe that the Authority's claim against Gallagher is derivative of the Moriarty lawsuit. Derivative liability exists where the existence of the third-party claim is contingent upon the outcome of the main claim. *See Yelin*, 119 N.M. at 557–58, 893 P.2d at 453–54. Where the claim against the third party could be brought independently of the main claim, derivative liability is not established. *See id.*

{15} The Authority's claim against Gallagher is that it negligently drafted insurance policies in violation of the parties' agreement, and that the Authority was damaged as a result. This is a separate cause of action that existed apart from the Moriarty lawsuit, and was not contingent upon the Moriarty lawsuit because it was viable as a cause of action regardless of the outcome of Moriarty's lawsuit against the Authority. *See id.* at 558, 893 P.2d at 454 (finding that derivative liability did not exist where the plaintiffs' claim for negligent misrepresentation and breach of contract could have been brought independently of the main claim for breach of a lease agreement).

{16} The Authority seeks to distinguish *Yelin* on the basis that, in this case, both Moriarty's claim against the Authority and the Authority's claim against Gallagher arose out of the insurance policies drafted by Gallagher. The Authority also argues that the amount it seeks from Gallagher is the same amount that it was required to pay to Moriarty. However, this only establishes that the two claims may be transactionally related, it does not create derivative liability. Even where claims are transactionally related, derivative liability does not exist if the claim against the third party could be brought independently of the outcome of the main claim. *See id.* at 557, 893 P.2d at 453 (stating that even though the two claims were transactionally related, derivative liability was not established because the third-party claim was not contingent upon the

main claim). In this case, the only effect the judgment in the Moriarty lawsuit would have on the Authority's claims against Gallagher would be to establish a portion of the damages that the Authority suffered as a result of Gallagher's alleged professional negligence. This is insufficient to establish derivative liability. *See id.* (holding that derivative liability was not established where the only relationship between the third-party claim and the main claim would be to apportion an amount of damages that may be awarded if the defendant were found liable). Since the Authority has not established that its claim against Gallagher was derivative of the Moriarty lawsuit, we reject its argument that it has a claim for indemnification based on derivative liability.

{17} The Authority also argues that a claim for indemnity exists where the parties have a legal relationship, the party seeking indemnity was not actively at fault, and the other party would be unjustly enriched unless required to indemnify. The Authority argues that it has a right to indemnification in this case because it had a contractual relationship with Gallagher, and it pled that Gallagher would be unjustly enriched if not required to indemnify the Authority for the "defective policy" that it drafted and sold to the Authority. To the extent that the Authority argues that a broad claim in equity is sufficient to create a right of implied indemnification, we disagree. The situations in which we have implied a right of indemnification in equity are limited, and not every claim in which a party contends that another is responsible for a judgment it paid states a cause of action for indemnification. *See id.* at 556–58, 893 P.2d at 452–54 (refusing to recognize a right of indemnification where the plaintiffs' claim did not come within the circumstances in which New Mexico has implied a right of indemnification to prevent an inequitable result). In this case, the Authority could have brought an action for professional negligence against Gallagher. The Authority's failure to timely assert its professional negligence claim against Gallagher will not afford it a claim in equity once the statute of limitations has passed. *See Sims v. Sims*, 1996–NMSC–078, ¶ 28, 122 N.M. 618, 930 P.2d 153 (stating that an action in equity will not lie where there is a complete and adequate remedy at law).

## CONCLUSION

{18} The Authority pled a cause of action for professional negligence against Gallagher that was barred by the statute of limitations. Additionally, the Authority has not established that it has a claim for indemnification against Gallagher. We therefore affirm the district court's order dismissing the case for failure to state a claim upon which relief can be granted.

{19} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.