Vermont Superior Court
Filed 02/25/26
Addison Unit

VERMONT SUPERIOR COURT
Addison Unit
7 Mahady Court
Middlebury VT 05753
802-388-7741
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-04657

**MD Holdings, Inc. v. NextGen Energy & Environmental Solutions LLC et al**

## ENTRY REGARDING MOTION

Title:      Motion to Dismiss Third Party Claims (Motion: 1)
Filer:      Justin B. Barnard; Noah A Greenstein
Filed Date:      December 17, 2025

Third-party Plaintiffs NextGen Energy Environmental Solutions LLC, D&M Petroleum and EV Solutions LLC, NextGen Equipment LLC, Hannibal Shabo, and Satbir Talwar have filed several third-party claims against third-party Defendant Mark Hamblin. Third-party Plaintiffs are the first-party defendants in the underlying action in this docket. Mr. Hamblin is the principal of the first-party plaintiff in the underlying action. Broadly speaking, the third-party complaint alleges that Mr. Hamblin's conduct following an April 2023 asset transaction subject of the claims in the underlying action, requires the court to shift any liability third-party Plaintiffs might incur in that underlying action to Mr. Hamblin. Third-party Plaintiffs additionally tack on several other third-party claims against Mr. Hamblin that purportedly arise from the same transaction.

Before the court is Mr. Hamblin's motion to dismiss and to strike the third-party complaint.[1] Third-party Plaintiffs generally oppose. For reasons that follow, Mr. Hamblin's motion to dismiss and strike is GRANTED.

### I. Background

Third-party Plaintiffs assert that the third-party complaint concerns the same April 15, 2023, asset sale that forms the basis of the underlying action in this matter. Their own complaint most accurately captures the allegations:

> 10. After closing, Hamblin: (a) held himself out as "President, D&M Petroleum;" (b) interfered with scheduled work (including the RL Vallee Georgia Mobil project); (c) ordered parts without authorization (e.g., Wildco orders) and promised customer payment that did not occur; (d) withheld accounting access and used personal email for business purposes; (e) deleted critical information on a phone owned by Counterclaim Plaintiffs; (f) discouraged/ignored customers and spread confusion that the business was "shutting down;" and (g) enabled competitors to capture 2024 pipeline work immediately after his departure.

---

[1] A third-party defendant may move to dismiss, strike, or for severance or a separate trial of a third-party complaint. V.R.C.P. 14(a).

11. Third-Party Defendant's conduct alleged herein was contrary to his obligations and duties pursuant to the Transaction Documents.

12. As part of the April 2023 asset sale, which resulted in the Transaction Documents, Sellers agreed to provide post-closing transition/consulting assistance and cooperation for up to forty hours per work week, then on a fee basis from October 1, 2023 to September 30, 2024.

13. Post-closing, Hamblin breached his Agreements with Counterclaim Plaintiffs, when Third-Party Defendant Hamblin held himself out as "President" of "D&M Petroleum" while acting on behalf of himself and for his own benefit and the benefit of Plaintiff MD Holdings, Inc.

14. By representing himself as "President" of "D&M Petroleum," Hamblin intended to undermine Defendants' business and to signal to Defendants' customers and suppliers that Hamblin was still in charge, so that when he successfully destroyed Defendants' business he could buy back the assets inexpensively or foreclose and seamlessly resume his role as the leader of the Defendant companies.

15. Post closing, Hamblin breached his Agreements with Counterclaim Plaintiffs by, inter alia, canceling projects, urging postponement of scheduled work, ordering parts without authorization, and failing to cooperate in transition and accounting access, directly and proximately causing Third-Party Plaintiff lost profits and additional costs in amounts to be proven at trial.

Third-Party Compl. (filed Oct. 27, 2025) at ¶¶ 10–15.

To that end, third-party Plaintiffs bring six causes of action against Mr. Hamblin: equitable indemnity or equitable contribution (Count I), breach of contract (Count II), breach of implied covenant of good faith and fair dealing (Count III), tortious interference with contractual and prospective business relations (Count IV), fraudulent inducement, or in the alternative negligent misrepresentation (Count V), conversion (Count VI), injunctive relief (Count VII). *Id.*, at ¶¶ 16–36.

Mr. Hamblin moves to dismiss and strike these claims. He contends that there is no basis on which to imply indemnity in this case. More specifically, he argues that the first-party plaintiff's theory of liability in the underlying action is that third-party Plaintiffs defaulted on their obligations, but that there is no alleged legal relationship between third-party Plaintiffs and Mr. Hamblin that would, in law, imply his duty to indemnify. He also adds that Counts II through VII are otherwise inappropriately joined under Rule 14 if Count I, by them the only potentially suitable claim for an impleader, fails as a matter of law.

## II. Analysis

Vermont has an "exceedingly low" threshold to survive a 12(b)(6) motion. *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (mem.). Indeed, courts generally disfavor and rarely grant these. *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1. In determining whether a complaint survives a motion to dismiss, the court assumes the factual allegations made by the nonmoving party in the complaint are true, and all contravening assertions in the moving party's pleadings are false. *Richards v. Town of Norwich*, 169 Vt. 44, 49 (1999). The court is generally limited to the allegations and facts as established in a party's complaint, from which the court makes all reasonable inferences. *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. To the extent a party asserts "conclusory allegations or legal conclusions masquerading as factual conclusions," the court is not required to accept those as true. *Rodrigue v. Illuzzi*, 2022 VT 9, ¶ 33, 216 Vt. 308 (quotation omitted).

The court will only grant the motion if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420. This is because the purpose of a motion to dismiss for failure to state a claim is "to test the law of the claim, not the facts which support it." *Brigham v. State of Vermont*, 2005 VT 105, ¶ 11, 179 Vt. 525 (mem.) (quotation omitted). A complaint will thus survive if it contains factual allegations supporting each element of the claims asserted. *Colby*, 2008 VT 20, ¶¶ 7, 10.

Civil Rule 14 allows a defendant, as a third-party plaintiff, to implead a third party "who is or may be liable to such third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." V.R.C.P. 14(a). A third-party complaint, however, may not be brought *simply because* it arises out of the same nucleus of facts as the underlying claim. See e.g., *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 380 (S.D.N.Y. 2006). A fundamental principle of third-party practice is that to maintain a third-party complaint, a direct line of liability must be alleged to exist between the third-party plaintiff and the third-party defendant independent of that between the first-party plaintiff and defendant. *Moorhead Const. Co., Inc. v. City of Grand Forks*, 508 F.2d 1008, 1012 (8th Cir. 1975). Traditionally, derivative or secondary liability to the third-party plaintiff, on the basis of indemnity, contribution, or some similar theory, is essential for maintaining a third-party action. *Swett v. Haig's, Inc.*, 164 Vt. 1, 8 (1995) (quoting Reporter's Notes, V.R.C.P. 14). An entirely separate and independent claim cannot be maintained against a third-party under Rule 14, even if it arose out of the same general set of facts as the main claim. *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). Indeed, the provisions of Rule 14 are not mandatory; a party may forego impleading a third-party defendant in favor of asserting a claim in an independent action. See 6 Wright & Miller, Federal Practice and Procedure: Civil § 1442 (3d ed.).

In Count I here, third-party Plaintiffs plead equitable indemnity. Third-Party Compl., ¶¶ 16–18; see also Opposition (filed Jan. 28, 2026) at 3 ("Count I of the Third-Party Complaint specifically seeks equitable indemnity or contribution, alleging that 'if any amounts are adjudged due to Plaintiff on the Note, Guaranty, Mortgage, or as a deficiency, such liability was caused by Hamblin's wrongful acts and breaches' and that 'in equity and good conscience, Hamblin must indemnify Third-Party Plaintiffs for any such amounts.'"). "[I]ndemnity is a right accruing to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." *Morris v.*

*American Motors Corp.*, 142 Vt. 566, 576 (1983). Indemnity shifts the entire loss upon the real wrongdoer. *Peters v. Mindell*, 159 Vt. 424, 428 (1992); see also *Riblet Tramway Co. v. Marathon Elecs. Avtek Drive Div.*, 159 Vt. 503, 505–06 (1993) (observing that if the third-party plaintiff prevails against the principal plaintiff and incurs no liability, the third-party defendant in turn incurs no liability to the third-party plaintiff).

In Vermont, the right to indemnity exists only when one party has expressly agreed to indemnify another, or when the circumstances are such that the law will imply indemnity. *White v. Quechee Lakes Landowners' Ass'n, Inc.*, 170 Vt. 25, 28 (1999). Because third-party Plaintiffs here pled implied indemnity, it is their burden to show that equitable considerations here are such that it is fair to shift the entire loss occasioned by the injury from one party to another. *Id.*, at 29.

Our Supreme Court has found indemnity arising from various relationships. See *White*, 170 Vt. at 29–30 (collecting cases where indemnity applied). It has also imposed limits on the scope of indemnity. *Id.* (collecting cases to the contrary). The Court has, however, not before explicitly considered whether liability may be implied where a third party's wrongful act caused another party financial losses, which in turn caused that party to default on its respective financial obligations. Nonetheless, this court need not decide that question here. Indeed, even assuming that our Supreme Court would consider the relationship between the parties here sufficient to impose indemnity, the court still concludes that indemnity may not be imposed here because the alleged wrongs committed by third-party Plaintiffs in the underlying action and Mr. Hamblin in the third-party action are not the same. The court therefore concludes, for the reasons enunciated below, that the third-party indemnity claim is not derivative of the underlying claim and is not the proper subject of a third-party complaint. Several persuasive cases on point from elsewhere support this conclusion.

First, the court observes the reasoning of the Fifth Circuit in *Southeast Mortgage Co. v. Mullins*. 514 F.2d 747 (5th Cir. 1975). There, a third-party plaintiff purchased a house under a special federal housing program designed to assist low-income families in procuring homes. Through the program, the Department of Housing and Urban Development assisted the third-party plaintiff in obtaining a loan. Later, due to a loss of a state assistance check, the third-party plaintiff was unable to make the loan payment when due. Although she explained she would rectify the delinquency, the servicer of her loan refused her subsequent tenders of individual monthly payments and moved to foreclose the home. In the foreclosure proceeding, the third-party plaintiff impleaded the Department, effectively alleging that several of its failures caused her default.

The Fifth Circuit rejected the third-party claim, concluding that it could not be properly raised by means of a third-party complaint. In its reasoning, the court reiterated that impleader is appropriate only when the third-party defendant's potential liability is dependent upon the outcome of the main claim: "(A)n entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does rise out of the same general set of facts as the main claim." *Se. Mortg. Co.*, 514 F.2d at 749 (quotation omitted). The court further explicitly observed:

[E]ven treating [the third-party plaintiff's] complaint as stating solely an individual rather than a class claim, we still find that it is insufficiently related to the main suit to be maintained by impleader. The gravamen of the third party complaint is that HUD has violated its statutory responsibilities under the 235 program by failing to provide more stringent limitations on the right of program mortgagees to foreclose, an issue on its face distinct from and collateral to those raised by Southeast's suit. The sole connection between the two is the contention that, but for HUD's failure to adopt and enforce adequate regulations, there would have been no foreclosure proceedings.

*Id.*, at 750.

The Tenth Circuit reasoned similarly in *Rozelle v. Connecticut Gen. Life Ins. Co.* 471 F.2d 29 (10th Cir. 1972) (per curiam). There, the defendant in a mortgage foreclosure proceeding sought to implead the holders of timber rights reserved by his predecessors in title, alleging these rights had been improperly exercised by their holders, with the effect that he had been prevented from making sufficient money by developing the land to meet his mortgage payments. The court succinctly rejected that argument, writing only: "The contention cannot prevail. The obligation of Rozelle to pay was not conditioned upon the actions of the … trustees." *Rozelle*, 471 F.2d at 30.

Several state courts have also come to a similar conclusion. In *AAA Excavating, Inc. v. Francis Construction, Inc.*, a Missouri court dismissed indemnity based on the third-party defendant's alleged negligent misrepresentation. 678 S.W.2d 889 (Mo. Ct. App.1984). There, an excavating company sued a general contractor for unpaid work. The contractor impleaded a consultant, claiming the consultant was negligent in performing soil samples and compaction tests. The contractor argued that it was unable to pay the excavating company because it had spent funds on other repairs, occasioned by the consultant's misrepresentations. The court, however, dismissed the claim, noting: "If a third party plaintiff could proceed and recover against the third party defendant even if the third party plaintiff were to win in the suit brought by the plaintiff the petition would not be covered by [Rule 14 equivalent]." *Id*. at 894. "Regardless of the outcome of [the excavating company's] claim, defendant will still have a claim against [third-party defendant] for all of its claimed damages …. Defendant's claim is in no way dependent upon the disposition of plaintiff's petition against defendant." *Id*. at 892.

Similarly, the New Mexico Supreme Court considered an indemnity claim related to wrongs allegedly interfering with the ability to make a profit and thereby precluding a party from fulfilling its obligations under a lease in *Yelin v. Carvel Corp.* 893 P.2d 450 (N.M. 1995). There, the third-party plaintiffs (Yelins) asserted a claim for amounts allegedly owed as items of damage for another party's wrongful conduct and misrepresentations (Carvel Corp.), which allegedly induced the third-party plaintiffs to enter into a lease with yet another party (the Doolittles).

The court's reasoning rejecting the claim is instructive:

This is not really a claim that the third-party defendant is liable for the rent due from the Yelins; it is a claim that is independent of the lease itself. The Yelins maintain that their claim against Carvel is derivative of the Doolittles' claim because the main claim will determine whether the Yelins have been damaged by Carvel's actions. However, this argument mistakes the nature of derivative liability. The only effect resolution of the Doolittles' claim might have on the Yelins' claim will be to establish the amount of a portion of the damages that Carvel may owe if they are found to be liable to the Yelins. Carvel's actual liability is entirely separate from the Yelins' breach of the lease agreement. If the Yelins' allegations against Carvel are found to be true, the Yelins would be entitled to recover damages for breach of contract or misrepresentation regardless of whether the Doolittles recover against the Yelins. Thus, while the Yelins' claim against Carvel may be transactionally related to the Doolittles' main claim, it is not derivative of that claim and is not the proper subject of a third-party complaint. In addition, the presence of Carvel as a party in this matter would complicate rather than simplify resolution of the issues involved.

*Id*., at 454.

As the Fifth Circuit aptly summarized in a case examined above,
[t]he common thread running through these cases, and our own, is that the right or duty alleged to have been violated in the third party complaint does not emanate from the main claim but exists wholly independent of it. In each, the nexus with the principal action is not that it establishes the right to relief, but merely the need for relief.

*Southeast Mortgage Co.*, 514 F.2d at 750.

The court concludes that Mr. Hamblin's independent actions do not constitute a basis for implied indemnity in this case. *Haupt v. Triggs*, 2022 VT 61, ¶ 12, 217 Vt. 382. As a necessary consequence of this conclusion, Counts II through VII are inappropriately asserted as third-party claims. V.R.C.P. 14(a) ("The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence *that is the subject matter of the plaintiff's claim against the third-party plaintiff* …." (emphasis added)); see also *Schwab v. Erie Lackawanna R.R. Co.*, 438 F.2d 62, 70–71 (3rd Cir. 1971) (observing that Rules 14 and 18 have been read in conjunction to allow other claims arising from the same transaction *where an appropriate third party claim exists*).

## **Order**

Mr. Hamblin's motion to dismiss and strike is GRANTED. The court notes, however, that third-party Plaintiffs remain free to pursue their claims against Mr. Hamblin in a separate action should they choose so.[2]

---

[2] Third-party Plaintiffs suggest that depriving them "of their Counterclaim or Third-Party Claim, or forcing their Third-Party Claim into another docket would violate Defendants' fundamental rights to due process and would be wasteful of judicial resources." Opposition at 1–2, n 1. That view is simply wrong. Conversely, "[t]o refuse to

**Signed electronically February 24, 2026 pursuant to V.R.E.F 9(d).**

_____

**David Barra**
**Superior Court Judge**

---

dismiss a third-party complaint which did not meet the standards of [the] Rule … would be an abuse of discretion, … as would be a dismissal based upon an erroneous view of the substantive law." _Yates Expl., Inc. v. Valley Imp. Ass'n, Inc._, 773 P.2d 350, 355 (N.M. 1989) (citations omitted).