2008-NMSC-067

198 P.3d 342

## NEW MEXICO PUBLIC SCHOOLS INSURANCE AUTHORITY, Plaintiff–Petitioner,

v.

## ARTHUR J. GALLAGHER & CO., Arthur J. Gallagher & Co. U.K. Limited, and International Special Risk Services, Inc., Defendants–Respondents.

No. 30,643.

Supreme Court of New Mexico.

Nov. 26, 2008.

Coppler & Mannick, P.C., Paul D. Mannick, Santa Fe, NM, for Petitioner.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Douglas Arthur Baker, Zachary L. McCormick, Martha G. Brown, Albuquerque, NM, for Respondent.

## OPINION

CHÁVEZ, Chief Justice.

{1} The issues we resolve in this case are whether the plaintiff stated a cause of action for professional negligence [1] or indemnity and when that action, however characterized, accrued for the purpose of commencing the applicable statute of limitation. Plaintiff New Mexico Public Schools Insurance Authority (the Authority) contends that its cause of action against Defendants Arthur J. Gallagher & Co., Arthur J. Gallagher & Co. (U.K.) Limited, and International Special Risk Services, Inc. (collectively "Gallagher") was one for indemnification because its claim against Gallagher was derivative of an underlying lawsuit against it. The Authority also asserts that because the underlying lawsuit established the amount of the Authority's loss, as well as facts demonstrating that Gallagher was allegedly the cause of its loss, it did not have an actionable claim against Gallagher until the underlying lawsuit was resolved. Gallagher contends that the Authority has not successfully pled a cause of action for indemnification and that no matter how the Authority's claim is characterized, it is barred by the statute of limitation. We hold that the Authority's cause of action was one for professional negligence (i.e., malpractice) and that it did not accrue for the purpose of commencing the statute of limitation, as a matter of law, until the Authority suffered an adverse arbitration judgment in the underlying lawsuit.

## I. BACKGROUND

{2} The Authority is a state agency that operates under the Public School Insurance Authority Act (the Act), NMSA 1978, Sections 22-29-1 to -12 (1986, as amended

---

**1.** In this opinion we use the terms "professional negligence" and "malpractice" interchangeably.

*See Wiste v. Neff & Co., CPA,* 1998–NMCA–165, ¶ 5, 126 N.M. 232, 967 P.2d 1172.

through 2008). Part of the Authority's responsibility under the Act is to provide risk-related insurance coverage to participating public schools. Section 22–29–4. It does so by self-insuring the schools to a certain extent and also by procuring additional coverage from private insurance companies. *See* § 22–29–7. The Authority accordingly provided risk-related insurance coverage to Moriarty Municipal Schools (Moriarty).

{3} Between 1986 and 1991 the Authority insured Moriarty pursuant to policies written and brokered by Gallagher and underwritten by Lloyd's of London (the London policies). According to an agreement between Gallagher and the Authority, Gallagher was required to draft the London policies according to agreed-upon terms. The London policies set forth the conditions under which the Authority was required to provide coverage to Moriarty, as well as the extent of the Authority's obligations.

{4} In 1994 (approximately three years after the London policies expired), Moriarty discovered that one of its employees had embezzled approximately $610,453 from the school district between 1986 and 1994. Moriarty sought indemnity from the Authority for the crime losses that occurred between 1986 and 1991, the years the London policies were in effect.[2] Believing that the terms of the London policies did not require coverage, the Authority did not pay Moriarty anything for the crime losses it suffered from 1986 to 1991. A dispute subsequently arose between Moriarty and the Authority, and Moriarty sued the Authority in 1996 to recover those losses (the Moriarty arbitration). The parties in the Moriarty arbitration disputed whether the London policies provided coverage only for claims made within twelve months of the expiration of those policies or if they provided coverage for crimes that occurred while the policies were in effect, no matter when they were discovered. Gallagher was never a party to the Moriarty arbitration.

{5} The Moriarty arbitration was ultimately resolved in February 2004 in a written decision by an arbitrator who ruled in Moriarty's favor. The arbitrator found that although the policies did include a twelve-month "claims made" limitation for crime losses, an addendum to the policy did not incorporate, and therefore negated, the "claims made" limitation and subjected the Authority to liability. The Authority was therefore required to pay Moriarty for the crime losses it suffered due to the employee's embezzlement while the London policies were in effect, as well as for Moriarty's attorneys' fees and prejudgment interest, an amount totaling over $900,000.

{6} In January 2005—almost nine years after the commencement of the Moriarty arbitration but less than one year after its resolution—the Authority brought suit against Gallagher, alleging professional negligence and seeking reimbursement for the entire amount it was required to pay Moriarty. The district court dismissed the Authority's professional negligence claim as barred by the statute of limitation. However, it granted the Authority leave to amend its complaint to state another claim against Gallagher. The Authority amended its complaint, again seeking reimbursement from Gallagher, but this time on indemnity theories. Both the original and amended complaints alleged that Gallagher was liable to the Authority for the amounts it paid Moriarty on essentially the same facts: that as an insurance broker, Gallagher erroneously drafted and sold the London policies to the Authority, contrary to their agreement, thereby causing the adverse arbitration award against it in the Moriarty arbitration. In effect, the Authority alleged that Gallagher failed to provide the coverage that the Authority, Lloyds, and Gallagher had agreed upon, and as a result, claimed that Gallagher should reimburse the Authority for the amount it paid Moriarty under the London policies.

{7} Gallagher moved to dismiss the Authority's amended complaint pursuant to Rule 1–012(B)(6) NMRA, arguing that the Authority failed to allege facts that would support a claim for indemnity, that the Authority's amended complaint simply reiterated a claim for professional negligence against

2. Other insurance policies were in effect from 1991 to 1994 and are not at issue in this case.

Gallagher, and that it was therefore barred by the four-year statute of limitation under NMSA 1978, Section 37–1–4 (1880). The district court agreed with Gallagher, treated the Authority's claim as one for professional negligence, and dismissed the case as barred by the statute of limitation. The Authority appealed, and the Court of Appeals affirmed the district court's dismissal. *N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.,* 2007–NMCA–142, ¶ 1, 142 N.M. 760, 170 P.3d 998.

{8} The focus of the Court of Appeals' opinion was whether the Authority stated a claim for indemnification or professional negligence. *Id.* ¶ 9. After an analysis of indemnification principles, the Court of Appeals held that the Authority's claim could not be considered a claim for indemnification. *Id.* ¶¶ 10–17. Therefore, as a claim for professional negligence, it was barred by the statute of limitation. *Id.* ¶ 18. The Authority petitioned this Court for a writ of certiorari, which we granted to determine (1) whether the Authority stated a claim for professional negligence or indemnification, and (2) when that claim, however characterized, accrued for the purpose of commencing the applicable statute of limitation. *N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.,* 2007–NMCERT–010, 143 N.M. 74, 172 P.3d 1286.

{9} We agree with the Court of Appeals' conclusion that the Authority's claim does not fit within indemnification principles and that its amended complaint stated a claim for professional negligence. However, we hold that the Authority's action for professional negligence against Gallagher accrued when the arbitrator determined that the Authority was liable to Moriarty under the terms of the London policies as drafted by Gallagher. We therefore reverse the Court of Appeals and remand the case to the district court.

## II. DISCUSSION

{10} Although the Authority raised five separate issues in its petition for writ of certiorari, it essentially raises the following three questions for our consideration:

1. Has the Authority alleged a cause of action for professional negligence or indemnification?

2. When did the Authority's cause of action—whether for professional negligence or indemnification—accrue for the purpose of commencing the applicable statute of limitation?

3. Is a Rule 1–014(A) NMRA motion to implead a third-party defendant for indemnification compulsory or permissive?

Because we hold that the Authority's claim is one for professional negligence, we do not address the Rule 14 impleader issue. Therefore, we consider only whether the Authority stated a claim for professional negligence or indemnification and when that claim accrued.

## A. STANDARD OF REVIEW

{11} "A district court's decision to dismiss a case for failure to state a claim under Rule 1–012(B)(6) is reviewed de novo." *Valdez v. State,* 2002–NMSC–028, ¶ 4, 132 N.M. 667, 54 P.3d 71. In reviewing the district court's decision to dismiss for failure to state a claim, we accept as true all well-pleaded factual allegations in the complaint and resolve all doubts in favor of the complaint's sufficiency. *Id.* "A Rule 12(B)(6) motion is *only* proper when it appears that plaintiff can neither recover nor obtain relief under any state of facts provable under the claim." *Id.* (quotation marks and citation omitted). We treat the district court's characterization of the Authority's claim as one for professional negligence as a dismissal of the Authority's indemnity action for failure to state a claim upon which relief can be granted, and we review that dismissal de novo.

{12} In cases where the facts relevant to a statute of limitation issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts. *See State v. Kerby,* 2007–NMSC–014, ¶ 11, 141 N.M. 413, 156 P.3d 704; *Inv. Co. of the Sw. v. Reese,* 117 N.M. 655, 657, 875 P.2d 1086, 1088 (1994) (holding that "the statute in question was not correctly applied to the undisputed facts."). In other words, we review the district court's dismissal of the Authority's professional negligence claim as barred by the statute of limitation de novo. *See Kerby,* 2007–NMSC–

014, ¶ 11, 141 N.M. 413, 156 P.3d 704 (reviewing de novo defendant's statute of limitation defense after concluding the relevant facts were not in dispute).

## B. THE AUTHORITY'S CLAIM IS FOR PROFESSIONAL NEGLIGENCE

{13} This case first asks us to decide what type of claim a client may bring against a professional, when the professional's breach of contract or breach of duty causes the client to suffer an injury to a third party to whom the professional is not liable. The Authority contends that even though Gallagher did not injure Moriarty, it may nonetheless seek indemnity from Gallagher for the amount the Authority paid Moriarty that was allegedly Gallagher's fault. Gallagher contends that the Authority is restricted to either a breach of contract or a professional negligence claim. We agree with Gallagher.

{14} The arguments of both the Authority and Gallagher are motivated by the application of the statute of limitation to these types of claims. If the claim is for indemnity, the Authority argues that the statute of limitation did not begin running until it paid the arbitration award to Moriarty in December 2004, and thus its claim is not barred. The Authority's fallback position, in case its indemnity claim fails, is that its negligence action did not accrue until the Moriarty arbitration was resolved. Gallagher argues that if the claim is malpractice, the statute of limitation accrued at the latest when Moriarty filed suit against the Authority in 1996, and therefore it is now barred. Gallagher also argues that no matter how the Authority labels its claim, it is barred by the statute of limitation for malpractice actions. To the extent that this argument asks us to clarify the difference(s), if any, between statutes of limitation for indemnity and professional negligence claims, we need not and do not address it because we hold that the Authority's claim is for professional negligence.

{15} Set against the backdrop of the statute of limitation, the particular facts of this case demonstrate the difficulty in determining whether the Authority's claim should be one for indemnity or negligence. On the one hand, the Authority seeks reimbursement for losses it paid to Moriarty that were allegedly caused by Gallagher. Therefore, it may not be appropriate to require the Authority to have brought an action to recover those losses before its legal obligation to Moriarty was imposed, that is, before the issuance of the arbitrator's decision. On the other hand, the Authority's complaint demonstrates that its action is founded on the breach of Gallagher's duty or contract, and therefore should conceivably be brought in accordance with the statutes of limitation applicable to those claims. To resolve this dispute, we must determine when the Authority suffered harm and to whom that harm is allegedly attributable.

{16} The Authority argues that it has stated a claim for indemnity on theories of express contract, implied warranty, and derivative liability. Under each theory, the Authority claims that Gallagher should reimburse it for the entire amount it paid Moriarty as a result of Gallagher's alleged negligence that was not attributable to any fault on the Authority's part. We address each argument in turn.

## 1. THE AUTHORITY'S CLAIM FOR INDEMNITY BASED ON EXPRESS OR IMPLIED CONTRACT

{17} Actions for indemnity may arise from an express or implied contract to indemnify. *In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. 542, 546, 893 P.2d 438, 442 (1995) (*Vista Hills*). *But see* NMSA 1978, §§ 56–7–1 to –3 (1971, as amended through 2007) (voiding indemnity agreements in certain situations). Although the Authority argues that its contract with Gallagher is sufficient to support a claim for contractual indemnity, it did not allege in its amended complaint that its contract contained either an express or implied contract to indemnify. Instead, the Authority has only alleged that Gallagher agreed to procure appropriate insurance coverage that would substantially fulfill the parties' intentions. Because the Authority did not allege that Gallagher expressly or impliedly contracted to indemnify it, the district court did not err in granting Gallagher's motion to dismiss the Authority's claim on this ground.

## 2. THE AUTHORITY'S CLAIM FOR INDEMNITY BASED ON IMPLIED WARRANTY

{18} In the absence of an express or implied agreement to indemnify, the Authority asserts that its agreement with Gallagher included an implied warranty on Gallagher's part to indemnify it against losses arising from the London policies. We take the Authority's argument to mean that Gallagher's warranty to use reasonable skill, a warranty implicit in all professional services contracts, includes a warranty for indemnification. We disagree.

{19} When professional services provided pursuant to a contract are substandard, a plaintiff may bring a cause of action for malpractice or for breach of contract arising from the breach of the implied warranty to use reasonable skill. *Adobe Masters, Inc. v. Downey*, 118 N.M. 547, 548, 883 P.2d 133, 134 (1994). Whether a plaintiff sues for malpractice or for breach of contract, "the standard of care is the same and is measured by the duty to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Id.* We found no authority supporting the proposition that a professional services agreement should include an implied warranty of indemnity for losses paid to a third party when the professional who provided those services is not also directly liable to the third party for its injuries.

{20} We are aware, however, that New Mexico case law allows a party to recover *all damages* resulting from an agent's or broker's erroneous failure to procure coverage that he or she undertook to provide. *See, e.g., Sanchez v. Martinez*, 99 N.M. 66, 69–70, 653 P.2d 897, 900–01 (Ct.App.1982) (an insurance broker who undertakes to provide but negligently fails to procure insurance may be held liable for any damage resulting therefrom in breach of contract or negligence action). However, we again could not find any authority extending the principle elucidated in *Sanchez* to actions for indemnity. Therefore, we reject the Authority's argument that its professional services contract with Gallagher contained an implied warranty of indemnity.

## 3. THE AUTHORITY'S CLAIM FOR EQUITABLE INDEMNITY BASED ON DERIVATIVE LIABILITY

{21} The Authority's chief argument is that because its claim was contingent upon the outcome of the Moriarty arbitration, it has stated a claim for equitable indemnity based on Gallagher's derivative liability to it. In other words, the Authority argues that until the arbitrator determined that the London policies, as allegedly negligently drafted by Gallagher, subjected the Authority to liability to Moriarty, the Authority had no viable cause of action against Gallagher. As a result, according to the Authority, its claim for indemnification from Gallagher for the losses it paid to Moriarty should be allowed because Gallagher's liability to the Authority was derivative of the outcome of the Moriarty arbitration.

{22} Actions for indemnity may arise without agreement and by operation of law to prevent an unjust, unsatisfactory, or inequitable result. *Vista Hills*, 119 N.M. at 546, 893 P.2d at 442 (citation omitted); *Yelin v. Carvel Corp.*, 119 N.M. 554, 556, 893 P.2d 450, 452 (1995). Among the various situations in which New Mexico courts have applied equitable indemnity, we have allowed indemnification in actions for vicarious or derivative liability, "as when an employer must pay for the negligent conduct of its employee under the doctrine of respondeat superior or when a person is directed by another to do something that appears innocent but is in fact wrongful." *Vista Hills*, 119 N.M. at 546, 893 P.2d at 442. *See also Yelin*, 119 N.M. at 556, 893 P.2d at 452 (listing other situations in which equitable indemnity may apply). For example, "a blameless employer [as indemnitee] recovers from a negligent employee [as indemnitor], after the employer has been held liable to the injured third person upon the theory of respondeat superior." *Dessauer v. Mem'l Gen. Hosp.*, 96 N.M. 92, 97, 628 P.2d 337, 342 (Ct.App.1981) (quotation marks and citation omitted). Therefore, actions for equitable indemnification based on the indemnitor's derivative liability to the indemnitee are allowed in New Mexico in certain situations.

{23} We have also recognized actions for both traditional and proportional equitable indemnification. *See Otero v. Jordan Rest. Enters.*, 1996–NMSC–047, ¶ 14, 122 N.M. 187, 922 P.2d 569 (recognizing traditional indemnification in vicarious liability context); *Vista Hills*, 119 N.M. at 551–53, 893 P.2d at 447–49 (establishing proportional indemnification as an equitable doctrine in certain situations). Traditional indemnification grants the person who has been held liable for another's wrongdoing an all-or-nothing right of recovery from a third party, such as the primary wrongdoer. *Vista Hills*, 119 N.M. at 545, 893 P.2d at 441. When applicable, proportional indemnification allows a defendant to seek partial recovery from another for his or her fault. *Id.* at 552, 893 P.2d at 448. Because the Authority seeks reimbursement for all of its losses to Moriarty, its claim, if valid, would be one for traditional equitable indemnification.

{24} New Mexico courts recognize actions for traditional equitable indemnification only when the indemnitor and the indemnitee have a pre-existing legal relationship apart from the joint duty they owe the injured party. *Id.* at 545–46, 893 P.2d at 441–42. A relationship where the indemnitor owes a duty either in contract or tort to the indemnitee is sufficient to satisfy this requirement. *Id.* (citing *Peak Drilling Co. v. Halliburton Oil Well Cementing Co.*, 215 F.2d 368, 370 (10th Cir.1954)). Thus, the Authority's allegation that Gallagher breached a duty owed to the Authority by negligently drafting the London policies is sufficient to satisfy this requirement.

{25} Another requirement to bring an action for traditional equitable indemnification is that both the indemnitee and the indemnitor must be liable to the injured party. *See, e.g., Vista Hills*, 119 N.M. at 545–46, 893 P.2d at 441–42 (discussing traditional indemnification principles when two defendants have a joint duty to the injured party). Indeed, in *Vista Hills* this Court cited Restatement (Second) of Torts § 886(B) (1977) as authority for what situations may give rise to a right to indemnification. 119 N.M. at 546, 893 P.2d at 442. That section of the Restatement allows indemnification only when two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both. Restatement (Second) of Torts § 886(B)(1). Also, when we have stated that "[t]he purpose of traditional indemnification is to allow a party who has been held liable without active fault to seek recovery from one who was actively at fault[,]" we have done so in the context of discussing the *indemnitor's* fault to the injured party. *Vista Hills*, 119 N.M. at 546, 893 P.2d at 442. Our current law, therefore, recognizes equitable indemnity only in cases where both the indemnitor and the indemnitee are liable to the injured party.

{26} Gallagher points to this critical flaw in the Authority's complaint—that it has not alleged that Gallagher was also liable to Moriarty—as evidence that it has not stated a claim for indemnification. We agree. The Authority has not alleged that Gallagher is solely or jointly liable to Moriarty for any injury arising from the London policies. In fact, the complaint demonstrates that Gallagher's alleged negligence actually benefitted Moriarty by requiring the Authority to pay Moriarty for its crime losses instead of denying coverage under the London policies. Further, the Authority has not alleged that Gallagher and the Authority owed a joint duty to Moriarty to provide the allegedly agreed-upon coverage. Therefore, despite its pre-existing legal relationship with Gallagher, the Authority has not stated a claim for equitable indemnity based on Gallagher's derivative liability to it because the purported indemnitee (the Authority) and the indemnitor (Gallagher) are not both liable to Moriarty for its injury.

{27} Nevertheless, relying on language in *Vista Hills*, the Authority claims that equitable indemnity actions are appropriate when (1) the indemnitor and the indemnitee have an express or implied contractual relationship of any kind; (2) the indemnitee is not at fault for the injury; and (3) allowing an indemnity claim would prevent the unjust enrichment of the indemnitor. However, the Authority reads *Vista Hills* too broadly and appears to ignore the distinction between claims for indemnification based on a contract to indemnify and those based in equity.

{28} To state a claim for indemnification based on a contract to indemnify, it is not always necessary for the indemnitor to be liable to the injured third party. For example, in insurance agreements where the insurer indemnifies the insured for losses he or she suffers because of his or her own negligence, the insurer is not liable to the injured party. However, as discussed above, to state a claim for *equitable indemnification,* the indemnitor must be at least partly liable to the original plaintiff for his or her injuries. *See* Restatement (Second) of Torts § 886(B)(1). If we held otherwise and allowed claims for equitable indemnity to go forward when an indemnitor was not liable to the injured party, we would unnecessarily blur the distinction between direct causes of action for negligence and derivative claims for indemnification. We are wary of the effects such a decision could have on New Mexico's jurisprudence, including, as this case aptly demonstrates, its effects on the application of statutes of limitation.

{29} In a recent case with facts analogous to those before us, a federal district court judge applied Virginia law and dismissed an equitable indemnity action for failure to state a claim because the complaint had not alleged that the defendant had caused any harm to the injured party. *Canal Ins. Co. v. Lebanon Ins. Agency, Inc.,* 504 F.Supp.2d 113, 117–18 (W.D.Va.2007). In *Canal Insurance,* an insurance agent mistakenly submitted an incorrect application for uninsured motorist (UM) coverage to the insurance company, the effect of which was to increase the benefits available under the insured's UM policy from $50,000 to $750,000. *Id.* at 116. Before the agent could correct the mistake, an employee of the insured was injured in a motor vehicle accident and made a claim for UM coverage under the policy. *Id.* After settling the claim with the employee for $500,000, the insurance company sought indemnity from the insurance agent for the amount of its loss, claiming that the agent was negligent. *Id.*

{30} The district court concluded that "[a]n indemnity claim does not seek recovery for any direct harm caused by the defendant to the plaintiff—it is clearly distinct from a direct cause of action." *Id.* at 117. Rather, "a properly pled indemnity claim must allege that the defendant caused some *direct harm* to a third party and that the plaintiff discharged the resulting liability from this harm." *Id.* (emphasis added). The district court held that (1) the insurance company's injury (paying $500,000 instead of $50,000 to the insured) was caused directly by the agent's alleged negligence, and (2) the insurance agent had not harmed the third-party insured, because (3) the insured's injury was caused by the motor vehicle accident. *Id.* at 117–18. The district court further noted that "[i]t is apparent that [the insurance company] has asserted these indemnity claims at least in part in order to avoid the bar of the statute of limitations that might otherwise be applicable to a direct claim against [the insurance agent]." *Id.* at 117. Although not expressly a part of the district court's decision, we note that the agent's alleged negligence actually benefitted the insured by providing more coverage than he otherwise would have received under a correctly submitted application.

{31} On the facts before us as pled by the Authority, the Authority was injured when it was required to pay Moriarty more benefits than otherwise would have been required under correctly drafted policies. Like the injury to the insurer in *Canal Insurance,* the Authority's injury was caused directly by Gallagher's alleged negligence. It is also apparent that Moriarty's injury was caused not by Gallagher, but by the criminal acts of its employee when she embezzled funds from the school district. Therefore, because the Authority's injury was directly caused by Gallagher's alleged negligence and because Gallagher did not directly harm Moriarty, an equitable indemnity claim is inappropriate.

{32} Finally, we understand that the Authority has alleged that Gallagher's negligence will cause it to continue to face potential liability, perhaps indefinitely, for crime losses that may yet be discovered. In other words, Gallagher's alleged negligence in drafting the London policies may further expose the Authority to future, as yet undiscovered liability for crime losses that occurred during the period in which the London poli-

cies were in effect. We understand the Authority's concern to be that a denial of its claim for indemnity may preclude it from relitigating issues relating to Gallagher's alleged negligence with respect to undiscovered future injuries on the basis of res judicata and collateral estoppel. To the extent the Authority is arguing that its claim for indemnity should be allowed in order to avoid a potential inequity that may result from the application of issue or claim preclusion, this issue is not yet ripe for determination, and we need not address such a speculative concern at this time.

{33} For the reasons stated above, we hold that the district court was correct in dismissing the Authority's claim for indemnification on theories of negligence, breach of contract, implied warranty, and derivative liability because its claim was, in fact, one for professional negligence.

## C. THE AUTHORITY'S PROFESSIONAL NEGLIGENCE CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATION

{34} Having decided that the Authority's claim against Gallagher is for professional negligence and not for indemnity, we must determine if the district court was correct in dismissing that claim as barred by the statute of limitation. Gallagher concedes, and the Authority apparently agrees, that the statute of limitation for the Authority's professional negligence action is four years under Section 37-1-4. We accept this view without deciding it.

{35} Gallagher argues that no matter how the Authority characterizes its claim, our holding in *Sharts v. Natelson*, 118 N.M. 721, 885 P.2d 642 (1994), bars its action because the Authority (1) suffered an injury when the allegedly defective policies became effective, and (2) knew or should have known of Gallagher's alleged negligence when Moriarty filed its suit and alleged that the policies as written by Gallagher required coverage that the Authority had denied. Therefore, Gallagher argues, we must either dismiss the Authority's claim in accordance with *Sharts* or overrule *Sharts* and its progeny to allow the Authority's

claim to proceed. On the other hand, the Authority argues that because it could not have stated an actionable claim for professional negligence until the arbitrator determined it was liable to Moriarty, *Sharts* does not control the outcome of this case. We agree with the Authority.

{36} It is well settled that there can be no cause of action for negligence unless and until there has been a resulting injury. *See, e.g., Spurlin v. Paul Brown Agency, Inc.*, 80 N.M. 306, 307, 454 P.2d 963, 964 (1969). This is also true for malpractice claims. *See, e.g., Sharts*, 118 N.M. at 724, 885 P.2d at 645 (the client must suffer an "actual injury" before the statute of limitations begins to run). However, "[i]n New Mexico, a cause of action arises when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." *McNeill v. Burlington Res. Oil & Gas Co.*, 2008–NMSC–022, ¶ 37, 143 N.M. 740, 182 P.3d 121 (internal quotation marks and citation omitted).

{37} In *Sharts*, we established a two-prong test to determine when a legal malpractice claim accrues and held that "the limitations period for legal malpractice commences when (1) the client sustains actual injury and (2) the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action." 118 N.M. at 724, 885 P.2d at 645 (footnote and citations omitted). While both of these requirements may be met simultaneously, the statute does not begin to run until each one is satisfied individually. *Wiste v. Neff & Co., CPA*, 1998–NMCA–165, ¶ 8, 126 N.M. 232, 967 P.2d 1172.

{38} We define the "actual injury" that a client must suffer before he or she may state a malpractice claim as "the loss of a right, remedy or interest, or the imposition of a liability." *Sharts*, 118 N.M. at 724 n. 1, 885 P.2d at 645 n. 1 (internal quotation marks and citation omitted). Thus, any of these injuries, such as the loss of a right *or* the imposition of a liability, will be sufficient to show "actual injury" for the purpose of commencing the statute of limitation, "regardless of whether future events may affect

the permanency of the injury or the amount of monetary damages eventually incurred." *Id.* at 725, 885 P.2d at 646 (internal quotation marks and citation omitted). Therefore, a client may suffer injury, even though he or she has not yet ascertained the amount of his or her damages. *Id.*

{39} New Mexico courts have had the opportunity to address statute of limitation issues in a variety of "negligently drafted document" cases and have held in some situations that the client is "actually injured" when those documents became effective. For example, a purported beneficiary of a negligently drafted will suffered an actual injury when the will took effect, which happened upon the testator's death. *Jaramillo v. Hood*, 93 N.M. 433, 434, 601 P.2d 66, 67 (1979). In the case of negligently drafted restrictive covenants, an attorney's client was actually injured when the deeds containing those covenants took effect. *Sharts*, 118 N.M. at 725, 885 P.2d at 646. In both cases, this Court determined that the actual injury occurred when the client lost a legal right. We then applied the discovery rule to ascertain when the claim accrued and the statute of limitation thus began to run. *See id.* at 726, 885 P.2d at 647; *Jaramillo*, 93 N.M. at 434, 601 P.2d at 67.

{40} Our courts, however, have not treated all negligently drafted document cases alike. For example, in the case of negligently prepared federal income tax returns (accountant malpractice), New Mexico has abandoned the *Sharts* two-prong test in favor of a bright-line rule that combines the actual injury and discovery elements into one ascertainable event that commences the limitation period: when the IRS issued its written assessment of tax deficiency. *Wiste*, 1998–NMCA–165, ¶ 10, 126 N.M. 232, 967 P.2d 1172 (citations omitted). The *Wiste* rule implicitly acknowledges that the event of injury and the discovery of harm may take place simultaneously, because the notice of deficiency imposes liability on the taxpayer and also informs the taxpayer of his or her negligently prepared tax return. *See LaMure v. Peters*, 1996–NMCA–099, ¶ 18, 122 N.M. 367, 924 P.2d 1379. Therefore, in accountant malpractice cases, New Mexico has rejected the "loss of a legal right rule" expressed in *Sharts* and exemplified in *Jaramillo* in favor of a rule that states that the actual injury occurs when a liability is imposed. *See id.* (had the notice of tax deficiency never been assessed, the taxpayer never would have been harmed by the accountant's negligence, and would not have had a cause of action).

{41} Similarly, we have also recognized that a cause of action for negligently failing to procure insurance arises when the insured suffers a liability that the requested insurance, if procured, would have assumed. *Spurlin*, 80 N.M. at 307, 454 P.2d at 964. For example, in cases where an agent fails to procure liability insurance that would have imposed on the insurer a duty to defend the insured, the would-be insured suffers an injury when a lawsuit against him or her is filed. *Id.* In these cases, the injury occurs when the insured incurs a liability in paying for his or her own defense. *Id.* We also recognized in *Spurlin* that the injury resulting from an agent's failure to procure insurance that would *not* have imposed a duty to defend the insured might occur when a judgment against the would-be insured was either entered or paid, or when a settlement has been made. *Id.* In each of these examples of failure to procure insurance, the injury occurs when the liability was imposed.

{42} The rules from *Wiste* and *Spurlin* stand in contrast to our holdings in our legal malpractice cases, including *Sharts*. The injury in both accountant malpractice and failure to procure insurance cases occurs when liability to a third party is imposed, and not when the client lost his or her legal right, as is the case with legal malpractice. The Authority's claim more closely resembles cases of accountant malpractice and failure to procure insurance than legal malpractice because the Authority was injured only when its liability to Moriarty was imposed. Thus, this case is governed by New Mexico case law that establishes the time of the plaintiff's actual injury as the time that the liability was imposed. Because the Authority's liability was imposed when the arbitrator issued his decision in the Moriarty arbitration, the statute of limitation for its malpractice action began running on that date.

{43} It is undisputed that the arbitrator issued his decision on February 20, 2004, finding that the twelve-month "claims made" limitation in the London policies did not apply to crime losses, subjecting the Authority to liability to Moriarty. It is also undisputed that the Authority's original complaint was filed on January 11, 2005, less than one year after that date. We thus conclude that the Authority's professional negligence claim is not barred by the statute of limitation. *See King v. Lujan,* 98 N.M. 179, 180, 646 P.2d 1243, 1244 (1982) (filing a complaint commences the action and tolls the statute of limitation).

{44} Nevertheless, Gallagher encourages us to adopt a rule in this case, and possibly all cases of negligently drafted documents, following the principle that "[a] client may suffer injury through loss of a legal right or harm to a legal interest even though the client has not yet ascertained the amount of his or her damages[.]" *Sharts,* 118 N.M. at 725, 885 P.2d at 646 (citations omitted). In this way, Gallagher is arguing that the Authority (1) was injured when the policies became effective, (2) should have sued Gallagher when Moriarty brought suit implicating Gallagher's potential negligence, and (3) could have determined its damages as in any negligence case where future losses may be incorporated into the damages calculation.

{45} Gallagher's argument fails to recognize that the only harm the Authority suffered was its additional liability to Moriarty under the London policies. In other words, if the Authority prevailed in the Moriarty suit, it could not have brought a negligence action against Gallagher because it would not have suffered any injury. The time when the allegedly negligently drafted documents became effective is irrelevant, because had Moriarty never made a claim under the London policies or had the Authority prevailed in the Moriarty arbitration, Gallagher's alleged error in drafting those policies would have been immaterial. Therefore, in cases where a professional's negligence in drafting a document results only in the imposition of a liability to a third party, the client is not injured until that liability is imposed,

and the statute of limitation begins to run at that time.

{46} We note that Gallagher also appears to argue that the Authority "suffered legal injury as a result of being sued" and was "actually injured" at the time the Authority had to defend itself in the Moriarty arbitration. We take Gallagher's argument to be that the Authority *could have* brought a malpractice action against Gallagher based on our decision in *Sharts,* seeking as damages its attorney fees and other litigation expenses incurred in the Moriarty arbitration. In other words, Gallagher argues that the Authority was injured when it was forced to defend against Moriarty's claim for coverage. However, Gallagher does not cite to any authority for the proposition that it is liable for the Authority's litigation expenses in the Moriarty arbitration, and in our research we could not find any New Mexico case standing for that proposition.

{47} Our conclusion that the Authority's claim did not accrue, as a matter of law, until the arbitrator issued his written decision is supported by our policy discouraging premature litigation. To hold that the Authority must have brought its claim against Gallagher prior to the arbitrator's decision in 2004 would require that the Authority have filed a claim against Gallagher in anticipation that Gallagher might have caused it harm solely to satisfy the limitation period and preserve the mere possibility of a claim. Encouraging the commencement of litigation only to preserve a potentially groundless claim is unsound policy and should be discouraged. *See Wiste,* 1998–NMCA–165, ¶ 23, 126 N.M. 232, 967 P.2d 1172 (Bosson, J., specially concurring) (acknowledging the "undesirable social consequence[s] of encouraging premature and avoidable litigation at the risk of having one's injury 'accrue.'").

{48} Furthermore, despite Gallagher's arguments to the contrary, our holding does not unfairly prejudice Gallagher in any substantial way. Because the Authority had not suffered any harm until the Moriarty arbitration was finalized, had it brought its malpractice claim against Gallagher before the arbitrator issued his decision, the malpractice claim would likely have been dismissed as not

ripe for determination, or at the very least stayed pending the resolution of the arbitration. *See, e.g., Spurlin,* 80 N.M. at 307, 454 P.2d at 964 ("[T]here [is] no cause of action for negligence until there [has] been a resulting injury." (citation omitted)); *Herrera v. Quality Pontiac,* 2003–NMSC–018, ¶ 6, 134 N.M. 43, 73 P.3d 181 (describing the elements of negligence, including damages). The delay in litigating the Authority's negligence claim was likely inevitable. In addition, the Authority brought its claim within one year of the arbitrator's written decision and only a few months after the arbitrator finalized the costs awarded to Moriarty. On these facts, we cannot see how our decision unfairly prejudices Gallagher.

{49} For these reasons, we hold that in cases of malpractice where the professional's alleged negligence has caused the plaintiff to be liable to a third party, the plaintiff's claim accrues when that liability is imposed. The Authority's cause of action accrued, as a matter of law, when its liability to Moriarty was determined in the Moriarty arbitration. Because the arbitrator's written decision was made on February 20, 2004 and the Authority's original complaint was filed on January 11, 2005, the claim was brought within the statute of limitation.

## III. CONCLUSION

{50} For the foregoing reasons, we affirm the district court's determination that the Authority stated a claim for professional negligence, reverse the Court of Appeals' dismissal of that claim as barred by the statute of limitation, and remand this case to the district court with instructions to reinstate it on the court's docket for proceedings consistent with this opinion.

{51} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON, and CHARLES W. DANIELS, Justices.