The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: March 17, 2026

**No. A-1-CA-41931**

**JOHN WHITE,**

Plaintiff-Appellant,

v.

**AMBER SKIES COMMUNITY, LLC;**
**BRAD DUNN; MICHAEL FLIPPIN;**
**MICHELLE LYNN FLIPPIN; JAMES**
**FREIBERGER; and BENSON KEPSEL,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Daniel A. Bryant, District Court Judge**

John White
Alamogordo, NM

Pro Se Appellant

John D. Wheeler & Associates, P.C.
Elizabeth K. Watson
John D. Wheeler
Alamogordo, NM

for Appellees

# OPINION

**HOUGHTON, Judge.**

{1} In this appeal we face three issues arising from a dispute between a resident and a mobile home park. John White (Plaintiff), proceeding as a self-represented litigant, appeals the district court's dismissal of his complaint against Amber Skies Community, LLC, its owners, and management (collectively, Defendants). Plaintiff argues that the district court erred when it (1) dismissed Plaintiff's fraudulent/negligent misrepresentation claim as being time-barred, (2) dismissed as de minimis Plaintiff's claim under the New Mexico Mobile Home Park Act (MHPA), NMSA 1978, §§ 47-10-1 to -23 (1983, as amended through 2007), and (3) declined to admit twenty-five exhibits offered by Plaintiff during a hearing on Defendants' motion to dismiss. We agree with Plaintiff on the first two issues and hold that the district court erred by dismissing Plaintiff's claims. As a result, we need not reach the third issue. We reverse and remand for proceedings consistent with this opinion.

**BACKGROUND AND PROCEDURAL POSTURE**[1]

{2}    In June 2014, Plaintiff purchased a home in the Amber Skies Community (Amber Skies)—a mobile home park in Alamogordo, New Mexico—and signed a lease with Amber Skies management for the use of a lot. In August 2014, Plaintiff received permission from Amber Skies management to move his collection of antiques from an outside storage facility to his lot, and did so shortly thereafter. A year later, Amber Skies came under new ownership and requested that Plaintiff sign a new lease agreement (the 2015 Lease). Plaintiff signed the 2015 Lease but claims he only did so "based on the false statement . . . that the new owner needed a new agreement [with] his name on it, arguing 'everyone had to sign it,'" and because Defendants expressed that it "was just a formality and it was basically the same as the original lease agreement the Plaintiff signed in 2014." Plaintiff continued storing his antiques on his leased lot, apparently without complaint from Defendants.

{3}    Approximately four years later, in mid-March 2019, Plaintiff received a certified but undated letter from Defendants asking Plaintiff to "remove all debris such as old furniture, boxes, [and] container[s]" from his lot, citing to the 2015

---

[1]Apart from the procedural posture, the following facts are taken from the allegations in Plaintiff's complaint. Given that we are reviewing the district court's grant of a Rule 1-012(B)(6) NMRA motion to dismiss, we accept such allegations as true. *See Healthsource, Inc. v. X-Ray Assocs. of N.M., P.C.*, 2005-NMCA-097, ¶ 16, 138 N.M. 70, 116 P.3d 861 ("A Rule 1-012(B)(6) motion to dismiss tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for the purposes of ruling on the motion, the court must accept as true.").

Lease. On March 27, 2019, Plaintiff sent a response letter to Defendants "to apologize weed[s were] growing up while he was out of town." The letter "explained to Defendants . . . the efforts made to fix the appearance of the yard," but also clarified that he received permission to store his antiques on his lot five years before. On April 9, 2019, Plaintiff received another letter from Defendants demanding that Plaintiff "remove all items in [his] yard appearing to be junk before April 24, 2019." The letter stated, "We gave you two (2) weeks to do this and now we are heading into our 4th week!" Plaintiff ultimately complied with Defendants' demands and moved his antiques, which allegedly caused Plaintiff unforeseen costs and lost work opportunities.

{4}    On April 4, 2022, Plaintiff attended a meeting for residents hosted by Amber Skies. At this meeting, Plaintiff claims to have learned from other residents that the 2015 Lease did not comply with the MHPA and that Amber Skies management had misrepresented the contents of the 2015 Lease. On March 30, 2023, Plaintiff filed suit against Amber Skies, its owners, and its management for eight causes of action.

{5}    Defendants responded by moving to dismiss the complaint arguing that Plaintiff failed to state any claim upon which relief could be granted and alternatively, that all of his claims were barred by the applicable statutes of limitation. While hearing the motion to dismiss, the district court recognized that Plaintiff merged all eight of his claims "into a single cause of action for negligent or

fraudulent representation." Plaintiff did not object and does not argue otherwise on appeal. Additionally, though absent from his complaint, Plaintiff raised a claim that Defendants had violated Section 47-10-14(A)(9) of the MHPA by failing to include a mandatory alternative dispute resolution (ADR) disclosure in the 2015 Lease. Defendants did not object to the inclusion of Plaintiff's new claim and the district court heard argument on its merits.

{6} Ultimately, the district court granted Defendants' motion to dismiss. The district court ruled that Plaintiff's fraudulent or negligent misrepresentation claim was barred by the statute of limitations. The court reasoned, "Negligent and fraudulent misrepresentation claims are subject to a four-year statute of limitations for which the 'discovery rule,' . . . would apply." The court found that Plaintiff discovered the facts underlying his claim in March 2019 when he first received the request letter to which he responded. The court found the complaint untimely because Plaintiff filed it on March 30, 2023, and the "operative dates predate March 30, 2019, by some unknown period of time, but by at least several weeks."

{7} As to Plaintiff's MHPA claim, the district court found that Plaintiff's lease did not contain the ADR disclosure, and that "Plaintiff did not make a request for [ADR] . . . because he was unaware he had the ability to make such a request." Despite those findings, the district court ruled that the omission of the ADR disclosure from the 2015 Lease was de minimis. The court found the omission to be

de minimis because ADR under the MHPA is "permissive," as the parties "may" submit an issue to ADR and either party "may terminate the process at any time without prejudice."

**I.      The District Court Erred in Dismissing Plaintiff's Claim for Fraudulent or Negligent Misrepresentation Based on the Expiration of the Statute of Limitations**

{8}      We review the district court's grant of a motion to dismiss de novo, accepting as true the appellant's well-pleaded allegations "and question whether the plaintiff might prevail under any state of facts provable under the claim." *Healthsource, Inc. v. X-Ray Assocs. of N.M., P.C.*, 2005-NMCA-097, ¶ 16, 138 N.M. 70, 116 P.3d 861. As a general matter, we note that cases should "sparingly and only in egregious circumstances" be dismissed on statute of limitations grounds prior to discovery. *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 45, 140 N.M. 111, 140 P.3d 532. "[I]f there is any possibility that disputed facts might be relevant to the ultimate disposition of a case, a court should be exceedingly cautious in dismissing the case before discovery has occurred." *Id.*

{9}      In assessing a statute of limitations challenge, courts must determine: (1) the applicable statute of limitations; (2) the date of accrual; (3) the date plaintiff filed suit; and (4) whether any tolling doctrines apply. *See Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶¶ 18-39, 148 N.M. 627, 241 P.3d 628 (analyzing a statute of

limitations issue by using the foregoing criteria); *see also Yurcic v. City of Gallup*, 2013-NMCA-039, ¶¶ 6-22, 298 P.3d 500 (same).

{10} The parties agree and we accept without deciding that Plaintiff's claim—whether classified as fraudulent or negligent misrepresentation—is subject to a four-year statute of limitations. *See* NMSA 1978, § 37-1-4 (1880) (specifying causes of action "for relief upon the ground of fraud" must be brought "within four years"); *see also Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 15, 138 N.M. 851, 126 P.3d 1215 (reasoning that a negligent misrepresentation claim "is governed either by the four-year statute of limitations applicable to 'all other actions not herein otherwise provided for and specified,' Section 37-1-4, or by the three-year statute of limitations applicable to negligence actions[, pursuant to] NMSA 1978, § 37-1-8 (1976)"). The record is also undisputed that Plaintiff filed his claim on March 30, 2023. Finally, Plaintiff has not raised any tolling arguments.

{11} Thus, the only disputed issue before us is when Plaintiff's claim accrued. Below, the district court applied the discovery rule and determined that Plaintiff's claim accrued before March 30, 2019, "by some unknown period of time, but by at least several weeks" because Plaintiff had knowledge of the basic facts underlying his suit by that time. Plaintiff asks us to reverse the district court's decision. He proposes two alternative accrual dates: either on April 9, 2019, when Defendants sent a second letter demanding Plaintiff move his antiques, or on April 4, 2022, when

Plaintiff gained actual knowledge of Defendants' alleged misrepresentations. Defendants on the other hand, contend that Plaintiff should have first discovered the fraud when he signed the 2015 Lease, or alternatively, as the district court found, when Plaintiff received Defendants' first letter in the weeks before March 30, 2019.

{12} Because the parties do not dispute that the discovery rule applies to Plaintiff's claim, for purposes of this analysis we accept that the discovery rule applies. "[T]he discovery rule dictates that a cause of action does not accrue for purposes of calculating the limitations period until the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim." *Butler*, 2006-NMCA-084, ¶ 26; *see* NMSA 1978, § 37-1-7 (1880). Thus, a cause of action accrues under the rule in one of two ways: (1) actual knowledge—when a plaintiff has actual personal knowledge of the facts constituting the cause of action; or (2) constructive knowledge—"when a plaintiff acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action." *Butler*, 2006-NMCA-084, ¶ 34 (internal quotation marks and citation omitted); *see Williams v. Stewart*, 2005-NMCA-061, ¶ 14, 137 N.M. 420, 112 P.3d 281 (using the term "inquiry obligation" to describe constructive knowledge under the reasonable person standard); *see also Yurcic*, 2013-NMCA-039, ¶ 9 (using the term "inquiry notice" to describe when a plaintiff has constructively discovered the claim under the

reasonable person standard). We emphasize that "[t]he key consideration under the discovery rule is the factual, not the legal, basis for the cause of action. The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff . . . knows . . . these facts are enough to establish a legal cause of action." *Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 8, 306 P.3d 524 (internal quotation marks and citation omitted).

{13} "Historically, the courts of this state have characterized the application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn." *Williams*, 2005-NMCA-061, ¶ 16; *see Butler*, 2006-NMCA-084, ¶ 27 ("[W]here there are disputed facts, it is generally the province of a jury to determine the date on which a plaintiff became aware or should have become aware of the facts underlying his or her claim."). Expounding on this principle in *Butler*, this Court held that a plaintiff must respond to a motion to dismiss on the ground that a claim is time-barred "with general factual allegations that, if proved, would successfully defeat the statute of limitations defense." 2006-NMCA-084, ¶ 1. Such factual allegations can be alleged either in the complaint, or in the response to the motion to dismiss and "are to be taken as true, and great specificity is not required" to meet this "modest burden." *Id.* ¶ 28. If such allegations reveal that a factual dispute exists, "granting a motion to dismiss on statute of limitations grounds would be improper." *Id.* ¶ 27.

{14}    Having considered the arguments of the parties and the record before us, we hold that sufficient allegations in Plaintiff's complaint exist to create a factual dispute as to whether Plaintiff should have discovered his claim in mid-March or after March 30, 2019. The district court reasoned that the letter exchange between the parties in March 2019 demonstrated Plaintiff should have known about the existence of his claim before March 30, 2019. We disagree and conclude that a conflicting inference may be drawn from the same evidence.

{15}    Defendants' undated March 2019 letter *requested* Plaintiff to "remove all debris such as old furniture, boxes, [and] container[s]" from his lot. Further, Plaintiff's March 27, 2019 response letter "explained to Defendants . . . the efforts made to fix the appearance of the yard," but asserted that he received permission to store his antiques on his lot five years before. It is debatable whether a reasonable person in Plaintiff's position would have understood Defendants' March 2019 request letter to mean they were reneging on their earlier agreement concerning the storage of Plaintiff's antiques. After all, Defendants had allegedly allowed Plaintiff to store his antiques there for four years without issue. A reasonable person might have acted as Plaintiff did to remind Defendants of the earlier agreement before jumping to the conclusion that Defendants had made negligent or fraudulent misrepresentations four years prior. Thus, a rational jury could find that Plaintiff did not have facts sufficient to trigger constructive notice until he received Defendants'

letter on April 9, 2019, which *demanded* Plaintiff remove the items in spite of his reference to their prior agreement.

{16} This is not the situation encountered in *Butler*, where the plaintiff made only "a bare assertion that if he were allowed to pursue discovery, he might find something to support his contention that he could not have discovered his claims through the exercise of reasonable diligence within the limitations period." *Id.* ¶ 32. Here, Plaintiff alleged facts demonstrating he received a request letter in March 2019, he responded asserting his understanding of the prior agreement, he received a subsequent demand letter in April 2019 and that he did not actually become aware of his claim until April 2022. Whether Plaintiff should have become aware of the facts underlying his claim when he received the request letter in March 2019 or the demand letter in April 2019 is a close factual question for the jury to decide, not a matter of law for the district court.[2] *Cf. Yurcic*, 2013-NMCA-039, ¶ 18 (reversing district court's grant of summary judgment on statute of limitations grounds where genuine issues of material fact existed as to when the plaintiff acquired inquiry notice of her claims).[3]

---

[2]Compelling policy reasons exist not to fix the accrual date—as a matter of law—at the earliest possible moment. *See N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 47, 145 N.M. 316, 198 P.3d 342 ("Encouraging the commencement of litigation only to preserve a potentially groundless claim is unsound policy and should be discouraged.").

[3] We note that this Court—albeit in unpublished opinions—has recently reversed similar orders to dismiss and remanded in favor of juries resolving factual

{17} Moreover, Plaintiff's alternative claim for negligent misrepresentation, as opposed to fraudulent, could not have accrued before April 2019 as a matter of law. In order to establish a claim for negligent misrepresentation, Plaintiff must have suffered actual damages. *See Encinias v. Whitener L. Firm, P.A.*, 2013-NMSC-045, ¶ 21, 310 P.3d 611 ("Without actual damages, [the plaintiff] cannot pursue a claim for negligent misrepresentation."). As alleged by Plaintiff in his complaint, he did not suffer actual damages until he was physically required to move his antiques after April 2019. Therefore, Plaintiff could not have successfully alleged a negligent misrepresentation claim in March 2019 because the essential element of damages had not been satisfied.

{18} We conclude that Plaintiff's complaint alleges facts sufficient to defeat Defendants' statute of limitations defense. Specifically, a factual dispute exists as to when Plaintiff became aware, or reasonably should have become aware, of the facts underlying his claim. Given New Mexico's strong preference that a jury decide such factual disputes, *see Williams*, 2005-NMCA-061, ¶ 16, and "our policy discouraging

---

disputes about the accrual date. *See McLaughlin v. Santa Fe Cmty. Coll.*, A-1-CA-39156, mem. op. ¶¶ 5-9 (N.M. Ct. App. Oct. 25, 2023) (nonprecedential) (reversing district court's grant of motion to dismiss on statute of limitations grounds where "factual disputes exist[ed] as to when [the p]laintiff became aware of—or reasonably should have been aware of—the facts underlying [her] claims"); *Durland v. Brewer Grocery, LLC*, A-1-CA-40676, ¶¶ 3-9 (N.M. Ct. App. Apr. 29, 2024) (nonprecedential) (reversing district court's dismissal of the plaintiff's complaint on statute of limitations grounds because "[t]he complaint provide[d] a factual basis to support . . . [the] contention that the claim did not accrue until [later]").

premature litigation," *see N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 47, 145 N.M. 316, 198 P.3d 342, we reverse the district court's dismissal of Plaintiff's claim on statute-of-limitations grounds.

{19} Finally, because we reverse the district court's dismissal of Plaintiff's fraudulent or negligent misrepresentation claim, we need not decide whether the district court abused its discretion in rejecting the twenty-five exhibits Plaintiff sought to admit during the hearing on Defendants' motion to dismiss. Plaintiff is not barred from attempting to admit exhibits, including the ones previously denied, at future proceedings.[4]

**II.    The District Court Erred by Ruling That Defendants' Failure to Include an ADR Disclosure Was De Minimis**

{20} We review the district court's interpretation of the MHPA de novo. *See Tucson Elec. Power Co. v. N.M. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 6, 456 P.3d 1085 ("[T]he interpretation of statutes presents a question of law that we review de novo."). We begin by "examining the language utilized by the Legislature, as the text of the statute is the primary indicator of legislative intent." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361. We read the "statutory subsection in reference to the statute as a whole and read the

---

[4]We note, however, that "[self-represented] litigants must comply with the rules and orders of the court and will not be treated differently than litigants with counsel." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 30, 145 N.M. 533, 202 P.3d 126.

several sections together so that all parts are given effect." *Id.* Further, we consider "the practical implications and the legislative purpose of a statute, and when the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application, we go beyond the mere text of the statute." *Id.*

{21}     The plain language of Section 47-10-14 states:

> A.     The terms and conditions of a tenancy shall be adequately disclosed in writing in a rental agreement by the management to any prospective resident prior to the rental or occupancy of a mobile home space or lot. The disclosures *shall* include:
>
> (1)     the term of the tenancy, the amount of the rent and the dollar amount of any rent increases for each of the preceding two years;
>
> (2)     the day the rental payment is due;
>
> (3)     the day when unpaid rent shall be considered in default;
>
> (4)     the rules and regulations of the park then in effect;
>
> (5)     the zoning applicable to the property upon which the park is located;
>
> (6)     the name and mailing address where a manager's decision may be appealed;
>
> (7)     the name and mailing address of the owner of the park;
>
> (8)     all charges to the tenant other than rent; and
>
> (9)     A statement explaining the resident's right to request alternative dispute resolution of any disputes with the mobile home park owner or management, except for disputes over nonpayment of rent or utility charges or in the case of public safety emergencies.

(Emphasis added.) Section 47-10-14(A)(9) expressly requires that the management of a mobile home park "shall" disclose, in all rental agreements with prospective residents, "[a] statement explaining the resident's right to request [ADR]." The district court found and there is no dispute that "Plaintiff's rental agreement did not contain the disclosure regarding the right to request [ADR] provided for in . . . Section 47-10-14(A)(9)." Therefore, we conclude that the 2015 Lease falls short of Section 47-10-14's requirements.

{22}    Despite the clarity of the mandate in Section 47-10-14, the district court concluded and Defendants maintain on appeal, that the omission of the ADR disclosure was de minimis in light of a related provision of the MHPA, specifically Section 47-10-17. "The doctrine of de minimis is used to avoid unjust results in cases where an error, violation of a law or regulation, or failure to comply with certain requirements is so minor as to not justify drastic legal consequences of the error, violation, or failure." *Fuentes v. Santa Fe Pub. Schs.*, 1995-NMCA-050, ¶ 10, 119 N.M. 814, 896 P.2d 494; *see also Amkco, Co. v. Welborn*, 2001-NMSC-012, ¶ 15, 130 N.M. 155, 21 P.3d 24 ("The de minimis rule is an old legal maxim holding that equity will not involve itself in mere trifles."). The district court reasoned that the omission of the ADR disclosure was de minimis because ADR under the MHPA is permissive, not mandatory. We disagree and explain.

{23} Defendants encourage us to adopt the district court's reading of Section 47-10-17 that ADR is permissive because of the use of the word "may." Section 47-10-17 states:

> A. In any civil dispute between the management and a resident of a mobile home park arising out of the provisions of the [MHPA], except for nonpayment of rent or utility charges or in cases in which the health or safety of other residents is in imminent danger, the controversy *may* be submitted to [ADR] by request of either party prior to the filing of a court action or a forcible entry and detainer action. The cost of the [ADR] services shall be divided equally among the disputing parties.
>
> B. The agreement, if one is reached, shall be presented to the court as a stipulation. *Either party to the dispute resolution process may terminate the process at any time without prejudice.*
>
> C. If either party subsequently violates the stipulation, the other party may apply immediately to the court for relief.
>
> D. Any [ADR] pursuant to this section shall be performed by a professionally certified mediator approved by all disputing parties.

(Emphasis added.) We agree with the district court's and Defendants' reading of this section: either party may initiate ADR and either party may terminate it anytime thereafter. *See Cerrillos Gravel Prods., Inc. v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2004-NMCA-096, ¶ 10, 136 N.M. 247, 98 P.3d 1167 ("The word 'may' is permissive, and is not the equivalent of 'shall,' which is mandatory."). We disagree, however, that the permissive nature of ADR under the MHPA negates the mandatory nature of the required disclosure in Section 47-10-14(A)(9).

{24} We hold that Section 47-10-14 should be strictly interpreted and that the failure to include a mandatory disclosure is a non-de minimis violation of the MHPA. Generally, we "will not be bound by a literal interpretation of the words if such strict interpretation would defeat the intended object of the [L]egislature." *Grisham v. Reeb*, 2021-NMSC-006, ¶ 12, 480 P.3d 852 (internal quotation marks and citation omitted). Conversely, "it is equally true that many legislative goals require strict compliance." *Green Valley Mobile Home Park v. Mulvaney*, 1996-NMSC-037, ¶ 11, 121 N.M. 817, 918 P.2d 1317. Strict compliance is necessary when the intent of the Legislature "would be frustrated by anything less." *Id.*

{25} While the MHPA's purpose is not expressed in the text itself, our precedent has discerned that the MHPA is meant to protect mobile home park residents from "significant harm at the whim of [their] landlords." *Id.* ¶ 13. The interest in protecting mobile home park residents is predicated on their "inherent vulnerability as [people] who own[] a home but lease[] the land on which that home is located," and "because the cost of moving [a mobile home] is often a significant fraction of the value of the mobile home itself." *Id.* ¶ 12 (internal quotation marks and citation omitted). Plaintiff himself echoed that vulnerable reality when he told the district court, "My home is not movable . . . how can I move a 2,000 square foot home? Well, you can't just rip it up . . . . In other words, [Defendants] got me between a rock and a hard place." Recognizing the intent of the Legislature to protect mobile

home park residents, our courts have strictly interpreted other sections of the MHPA. *See id.* ¶ 13 (holding "as a matter of law, that a landlord must strictly comply with Section 47-10-3(A)(5) of the [MHPA] for [a] notice of termination to be effective"); *Four Hills Park Grp., LLC v. Masabarakiza*, 2024-NMCA-047, ¶ 15, 550 P.3d 851 (holding that "a landlord must strictly comply with Section 47-10-3(B) of the [MHPA] for the notice of nonpayment to be effective").

{26}    Furthermore, were we to interpret Section 47-10-17 to mean that an owner's failure to disclose the right to pursue ADR is de minimis, we would render Section 47-10-14(A)(9)'s mandate mere surplusage. This we cannot do. *See Slygh v. RMCI, Inc.*, 1995-NMCA-081, ¶ 4, 120 N.M. 358, 901 P.2d 776 ("A statute must be construed so that no word, clause, sentence, provision or part is rendered surplusage or superfluous."). We must, instead, ensure that "all parts are given effect." *Bishop*, 2009-NMSC-036, ¶ 11. Our reading achieves that end by ensuring the Legislature's mandatory disclosure in Section 47-10-14(A)(9) remains mandatory, while acknowledging that either party can elect to submit to ADR and can terminate ADR at any time under Section 47-10-17.

{27}    Next, we address Defendants' argument that although the ADR disclosure is mandatory, its omission "and any subsequent failure to pursue [ADR] . . . does not establish an independent cause of action giving rise to damages." We disagree.

**{28}** Section 47-10-10(D) explicitly provides a cause of action to residents for violations of the MHPA:

> The management or the resident may bring a civil action for violation of the rental agreement or *any violation of the* [*MHPA*] in the appropriate court of the county in which the mobile home park is located. Either party may recover *actual damages*, *or*, the court may in its discretion award such *equitable relief* as it deems necessary, including the enjoining of either party from further violations.

(Emphasis added.) "With Section 47-10-10(D), the [L]egislature created the remedy for violation of the MHPA . . . and granted the remedy of an injunction to prevent further violation, in addition to other remedies, including damages." *Martinez v. Sedillo*, 2005-NMCA-029, ¶ 6, 137 N.M. 103, 107 P.3d 543. Accordingly, Plaintiff's MHPA claim, even without actual damages, remains a viable cause of action.

**CONCLUSION**

**{29}** For the foregoing reasons, we reverse the district court's dismissal of Plaintiff's fraudulent or negligent misrepresentation claim, as well as the district court's dismissal of Plaintiff's MHPA claim. We remand for proceedings consistent with this opinion.

**{30}** **IT IS SO ORDERED.**

_____
**KRISTOPHER N. HOUGHTON, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Chief Judge**

_____
**GERALD E. BACA, Judge**